**Plaintiff's Exhibit 1**

Pete Wood (ISB# 10263)
1604 N. 30th St. /Boise, ID 83703
Telephone: (208) 891-9546 / petewoodlaw@gmail.com
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **BRANDON FORLAND,**<br><br>Plaintiff,<br><br>vs.<br><br>**CITY OF BOISE, OFFICER BRYCE BIENZ, and OFFICER ALAN VIENS,**<br><br>Defendants. | Civil Action No: 1:26-cv-26-BLW<br><br>**FIRST DECLARATION OF PLAINTIFF BRANDON FORLAND** |

**FIRST DECLARATION OF PLAINTIFF BRANDON FORLAND**

I, Brandon Forland, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct:

1. The contents of this Declaration are based on my personal knowledge.

2. If I were called to testify under oath, the contents of this Declaration would reflect the testimony I would give in court under oath.

3. Attached hereto as Plaintiff's **Exhibit 2** is a true and accurate photograph of the eastbound entrance to the alley off Capitol Blvd. in downtown Boise as it appeared on the afternoon of July 20, 2025. I know the photo is an accurate representation because I took the photo myself. The photograph clearly shows that there was not a "Do Not Enter" or "One-Way" sign at the eastbound entrance to the alley off Capitol Blvd. on July 20, 2025.

4. Attached hereto as Plaintiff's **Exhibit 3** is a true and accurate Google Map image obtained directly from Google Maps showing the eastbound entrance to the alley off Capitol

Blvd. in downtown Boise in 2023 (September). Note that as of the filing of this declaration, 2023 is the most recent Google Map image available for this location and the oldest available image from this location is 2007. The 2023 image clearly shows that there was not a "Do Not Enter" nor a "One-Way" sign present at the eastbound entrance to the alley off Capitol Blvd. in downtown Boise in September of 2023. I personally reviewed all available Google Map images from this location for the years 2007-2023 and at no point during that period was there a "Do Not Enter" or "One-Way" sign at this location.1

5. Attached hereto as Plaintiff's **Exhibit 4** is a true and accurate Google Map image obtained directly from Google Maps showing the eastbound entrance to the alley off Capitol Blvd. in downtown Boise in 2007 (July). The 2007 image clearly shows that there was not a "Do Not Enter" nor a "One-Way" sign at the alley's eastbound entrance off Capitol Blvd. in downtown Boise in July of 2007.

6. Attached hereto as Plaintiff's **Exhibit 5** is a true and accurate (daytime) photograph of the newly installed "Do Not Enter" and "One-Way" signs which the City caused to be installed at the eastbound entrance of the alley off Capitol Blvd. after learning of my intent to file my lawsuit (filed in January of 2026). I know the photo is an accurate representation because I was present when the photo was taken on March 23, 2026.

7. Attached hereto as Plaintiff's **Exhibit 6** is a true and accurate (nighttime) photograph of the newly installed "Do Not Enter" sign—which the City recently caused to be installed at the east entrance of the alley off Capitol Blvd. after learning of my intent to file this lawsuit. I know the photo is an accurate representation because I took the photograph myself on April 23, 2026.

---

1 No images were available for this location for years 2020, 2010, 2009, and 2008.

8. Attached hereto as Plaintiff's **Exhibit 7** is a true and accurate (nighttime) photograph of the back of the newly installed "Do Not Enter" and "One-Way" signs—i.e. looking west from the location where I was seized back towards Capitol Blvd.—which the City caused to be installed at the alley's east entrance off Capitol Blvd. after learning of my intent to file this lawsuit. Note that the back of the "Do Not Enter" sign (looking west) is a Stop sign. I know the photo is an accurate representation because I took the photograph myself on April 23, 2026.

9. Attached hereto as Plaintiff's **Exhibit 8** is a true and accurate Google Map image obtained directly from Google Maps looking west from Capitol Blvd. onto West Grove Street in downtown Boise in 2023 (September). Grove St. enters Capitol Blvd. approximately 165-feet south of the alley where I was seized. Note that as of the filing of this declaration 2023 is the most recent Google Map image available for this location; and the oldest image from this location is 2007. The 2023 image clearly shows that a "Do Not Enter" sign was present where Grove St. intersects with Capitol Blvd. in downtown Boise in 2023 (September). I personally reviewed all Google Map images from this location for the years 2007 through 2023 and can attest that during that period there was always at least one "Do Not Enter" sign(s) present at this location in all images dated 2023-2007.2

10. Attached hereto as Plaintiff's **Exhibit 9** is a true and accurate Google Map image obtained directly from Google Maps looking west from Capitol Blvd. onto West Grove Street in downtown Boise in 2007 (July). The 2007 image clearly shows that two "Do Not Enter" signs were posted where Grove St. intersects with Capitol Blvd. in downtown Boise in July of 2007.

11. Attached hereto as Plaintiff's **Exhibit 10** is a true and accurate photograph of the

2 No images were available for this location for years 2020, 2010, 2009, and 2008.

westbound entrance to the alley off 6th St. in downtown Boise as it appeared on the afternoon of July 20, 2025. I know the photo is an accurate representation because I took the photo myself. The photograph clearly shows that a "Do Not Enter" sign was not present at the westbound entrance to the alley off 6th St. in downtown Boise on July 20, 2025.

12. Attached hereto as Plaintiff's **Exhibit 11** is a true and accurate Google Map image obtained directly from Google Maps showing the westbound entrance to the alley off 6th St. in downtown Boise for the year 2024. Note that as of the filing of this declaration 2024 is the most recent Google Map image available for this location; and the oldest available image from this location is 2011. The 2024 image clearly shows that a "One-Way" sign was not present at the westbound entrance to the alley off 6th St. in downtown Boise in 2024 (September). I also personally reviewed all available Google Map images from this location for the years 2011 through 2024. I can attest that a "One-Way" sign was not present in this location for years 2024, 2023, and 2022; however, a "One-Way" sign was present (on the east side of 6th St.) for years 2021-2011.3

13. Attached hereto as Plaintiff's **Exhibit 12** is a true and accurate Google Map image obtained directly from Google Maps showing the westbound entrance to the alley off 6th St. in downtown Boise in 2023 (August). The image clearly shows that a "One-Way" sign was not present at the westbound entrance to the alley off 6th St. in downtown Boise in August 2023.

14. Attached hereto as Plaintiff's **Exhibit 13** is a true and accurate Google Map image obtained directly from Google Maps showing the westbound entrance to the alley off 6th St. in downtown Boise for the year 2022 (October). The image clearly shows that a "One-Way" sign was not present at the alley's westbound entrance off 6th St. in downtown Boise in October

3 No images were available for years 2020, 2014, 2013, and 2012.

2022.

15. Attached hereto as Plaintiff's **Exhibit 14** is a true and accurate Google Map image obtained directly from Google Maps showing the westbound entrance to the alley off 6th St. in downtown Boise for the year 2021 (June). The image shows that a "One-Way" sign was present at the westbound entrance to the alley off 6th St.—albeit on the east side of 6th St.—in June 2021. Note this is the same image as Defendant's Exhibit B.

16. Attached hereto as Plaintiff's **Exhibit 15** is a true and accurate Google Map image obtained directly from Google Maps showing the westbound entrance to the alley off 6th St. in downtown Boise for the year 2011 (July). The image shows that a "One-Way" sign was present at the westbound entrance to the alley off 6th St.—albeit on the east side of 6th St.—in July 2011.

17. Attached hereto as Plaintiff's **Exhibit 16** is a true and accurate photograph of the "One-Way" sign the City caused to be installed at the westbound entrance to the alley off 6th St. in downtown Boise after learning of my intent to file this lawsuit (filed in January of 2026). I know the photo is an accurate representation because I was present when the photo was taken on March 23, 2026.

18. Attached hereto as Plaintiff's **Exhibit 17** is a true and accurate screenshot taken directly from Officer Bienz's BWC footage (DX-G) with a timestamp of 01:35:40.

19. Attached hereto as Plaintiff's **Exhibit 18** is a true and accurate screenshot taken directly from Officer Bienz's BWC footage (DX-G) with a timestamp of 01:36:00.

20. Attached hereto as Plaintiff's **Exhibit 19** is a true and accurate screenshot taken directly from Officer Bienz's BWC footage (DX-G) with a timestamp of 01:41:03.

21. Attached hereto as Plaintiff's **Exhibit 20** is a true and accurate screenshot taken

directly from Officer Viens' BWC footage (DX-K) with a timestamp of 01:35:41.

22. Attached hereto as Plaintiff's **Exhibit 21** is a true and accurate screenshot taken directly from Officer Viens' BWC footage (DX-K) with a timestamp of 01:35:46. I am the person who added the red circle for the purpose of highlighting the pedestrian traffic on the sidewalk.

23. Attached hereto as Plaintiff's **Exhibit 22** is a true and accurate screenshot taken directly from Officer Viens BWC footage (DX-K) with a timestamp of 01:35:49. I am the person who added the red circle for the purpose of highlighting the vehicle traffic on Capitol Blvd.

24. Attached hereto as Plaintiff's **Exhibit 23** is a true and accurate recording of the phone call I had with Ada County Highway District (ACHD) employees Dave Sirdar and Josh Saak on December 19, 2025. I both recorded and participated in the call and am familiar with its contents.

25. Attached hereto as Plaintiff's **Exhibit 24** is a true and accurate copy of the letter I received from Boise Chief of Police Christopher Dennison dated September 3, 2025.

26. Attached hereto as Plaintiff's **Exhibit 25** is a true and accurate copy of the email/ letter I received on October 9, 2025, from Kathie Brack, Case Administrator for Boise's Office of Police Accountability.

27. Attached hereto as Plaintiff's **Exhibit 26** is a true and accurate copy of the Computer-Aided Dispatch Report (CAD) from the incident. I was provided this document by the prosecutor as discovery in my traffic citation matter stemming from this incident (case number CR01-25-27004).

28. Attached hereto as Plaintiff's **Exhibit 27** is a true and accurate Google Map image

obtained directly from Google Maps showing the alley that runs between 5th and 6th Streets in downtown Boise for the year 2015 (July). The image clearly shows a garbage truck traveling eastbound down the alley.

29. Attached hereto as Plaintiff's **Exhibit 28** is a true and accurate copy of Chapters 2B, §§ 2B.46 & 2B.49 of the 2024 Federal Highway Administration's *Manual on Uniform Traffic Control Devices for Streets and Highways* ("MUTCD"). I accessed this document on May 19, 2026, at the following internet address: https://mutcd.fhwa.dot.gov/pdfs/11th_Edition/Chapter2b.pdf

30. Attached hereto as Plaintiff's **Exhibit 29** is a true and correct copy of the City of Boise's original Subdivision Plat. I obtained this copy on May 8, 2026, from Mat Denis, an Associate Planner with the City of Boise's Planning and Development Services.

31. Attached hereto as Plaintiff's **Exhibit 30** is a true and accurate copy of page 39 of a document containing a list of repealed ordinances produced by the City of Boise, which shows that former City Code No. 10-08 pertaining to "One-way streets and alleys" was repealed. I accessed this document on May 9, 2026, at the following internet address: https://www.cityofboise.org/media/4055/city_code_disposition_table.pdf

32. Attached hereto as Plaintiff's **Exhibit 31** is a true and accurate copy of promotional material provided by a Tyler Technologies pertaining to the company's electronic citation module called "Enforcement Mobile." I obtained the document on May 8, 2026, at the following internet address:

https://empower.tylertech.com/rs/015-NUU
525/images/Public_Safety_Enforcement_Mobile_Brochure.pdf?utm_campaign

33. Attached hereto as Plaintiff's **Exhibit 32** is a document I personally constructed

using true and accurate Google Map images obtained directly from Google Maps showing which alleys in downtown Boise have historically had one-way signs. The document clearly shows that historically the majority of alleys in downtown Boise did not contain one-way signage.4

***Officer Viens & Bienz unlawfully seized me on July 20, 2025.***

34. I am a combat veteran of the Iraq War. I served one year in Iraq as an 11B Infantryman with the United States Army. My combat service in Iraq changed me forever. Of import here, fighting for this country, and having friends severely wounded for this country, hardened my beliefs on the importance of our constitutional rights. My combat experience also taught me that wearing a government uniform is a great honor, but that like any honor, it comes with responsibilities—most notably to respect the constitution above all and to be cognizant and vigilant to live up to the values that wearing a uniform imposes on the person wearing it.

35. At approximately 0130 hours on the morning of July 20, 2025, I was driving a white Jeep Grand Cherokee in downtown Boise. At the time I was doing part-time rideshare work and was enroute to pick up customers. I was traveling northbound on S. Capitol Blvd., just south of Main Street. I turned right into a downtown alley near GPS location - 43.614658202500024, -116.20271872380088 - heading eastbound as my rideshare (passenger) pickup pin was located inside the alley. This is a busy area at that time of night as it is the primary bar zone for Boise. Shortly after I entered the alley I was unlawfully stopped by two uniformed Boise Police Officers (Officers Bienz and Viens) for purportedly driving the "wrong direction" in violation of I.C. § 49-636—because according to the officers the alley was a one-way (westbound) highway (even though the alley contained no signage indicating it was a one-

4 Plaintiff's **Exhibit 33** is simply an Exhibit List the Plaintiff is providing as a courtesy for the Court and Defendants.

way or that eastbound travel was prohibited).

36. Prior to addressing my unlawful seizure, I believe a brief explanation of the alley where the incident took place and its corresponding lack of “Do Not Enter” and “One-Way” signage is warranted. The alley where I was seized runs through Boise City Block No. 4 and was included in the City’s original plat(s). The alley is accessible from the east via S. Capitol Blvd. and from the west via S. 6th St. Running parallel to the alley to the north is W. Main Street and running parallel to the south is W. Grove Street. There are two entrances/exits to the alley. The east entrance is via S. Capitol Blvd. (this is where I entered on July 20, 2025) and the west entrance is via S. 6th St.

37. I am aware that the Defendants have provided various declarations asserting that the alleys in downtown Boise are one-ways (westbound). For example, Officer Bienz asserts in his declaration that “the Alley [where he seized me]… like most if not [] all alleys in downtown Boise – was designated and posted for westbound traffic only” and that “one-way travel in alleys facilitates garbage trucks to collect waste without being blocked or delayed by traffic approaching in the opposite direction.” (Dkt. 13-3, ¶ 4.) I disagree with the Defendants’ contention that downtown alleys were westbound one-ways at the time of my seizure. For example, a Google Map Image from 2015 clearly shows a garbage truck traveling eastbound down the adjacent alley that runs between 5th and 6th Streets. (See Plaintiff’s Exhibit 27.) Also, in December of 2025 I had a phone conversation with ACHD’s Right of Way Supervisor Dave Sirdar who told me he had no evidence or knowledge that alleys in downtown Boise are one-ways—let alone westbound one-ways. During that same call I also spoke with ACHD’s Traffic Engineering Supervisor Josh Saak (a Professional Traffic Engineer). Mr. Saak told me that it is the City of Boise—not ACHD—that dictates whether the alleys in Boise are one-ways and if so

what the proper of direction of travel should be.[5] Mr. Saak also informed me that Boise used to have an ordinance—which was repealed approximately 10 years ago—that listed, street by street, which specific alleys were one-ways and which direction of travel was proper for that specific alley. It makes sense that the City treated each alley separately i.e. "street by street" because some downtown alleys service residential buildings, while others serve only businesses, and the alleys can vary from street to street in width, etc. Mr. Saak further explained that the one-way signs that did exist in downtown alleys were "left over" from back before the one-way alley ordinance was repealed (likely around 10-years ago). While I was not able to find a copy of the actual repealed ordinance Mr. Saak told me about, I was able to find a list of Boise's repealed ordinances and discovered the now repealed one-way alley ordinance used to be City Code No. 10-08. (Plaintiff's Exhibit 30.) At the conclusion of my call with Mr. Saak I informed him that I intended to file a federal lawsuit concerning my unlawful seizure, which I understand was communicated to the City, who in turn requested that ACHD install "Do Not Enter" and "One-Way" signs in alleys throughout downtown including the eastern and western entrances to the alley where I was seized off Capitol Blvd.

38. However, as noted above, on the night of July 20, 2025, the alley's east entrance (off Capitol Blvd.) did not have a "Do Not Enter" or "One-Way" sign of any kind. I have subsequently reviewed Google Map images of the eastbound alley entrance off Capitol Blvd., which date back to 2007. At no point from 2007 to the event on July 20 (2025) was there a "Do Not Enter" or "One-Way" sign at that alley's east entrance as required to inform drivers that eastbound travel in the alley was prohibited. I have also subsequently reviewed the 2024 Federal

5 Note that Mr. Saak is a very sharp individual with an incredible knack for information retention as evidenced by his impressive winning streak on the television show Jeopardy (see link below): https://kidotalkradio.com/wow-boise-man-wins-big-on-jeopardy/

Highway Administration's *Manual on Uniform Traffic Control Devices for Streets and Highways* ("MUTCD") regulations and learned that, as common sense would suggest, One-Way and/or Do Not Enter signs must be placed at the location where a driver would unlawfully enter a highway designated for one directional travel (i.e. the alley's eastern entrance off Capitol Blvd.). (Plaintiff's Exhibit 28 (MUTCD Chapters 2B §§ 46 & 49).). After learning of my intent to file pro se lawsuit, the City of Boise asked ACHD to install large "Do Not Enter" and "One-Way" signs at the alley's eastbound entrance off Capitol Blvd. The newly installed sign was not present on the night of July 20 (2025) when I was seized. The newly installed sign is located approximately 50-75 feet from where Officers Bienz and Viens were standing during my seizure. The signs are incredibly easy to see—even at night—while standing in the exact locations the officers were standing for the duration of my 6.5-minute seizure.

39. Similar to the eastbound entrance off Capitol Blvd., on the day of the event July 20 (2025) the westbound entrance to the alley off 6th St. also did not have signage indicating that the alley was a one-way nor that the only lawful direction of travel was westbound. I have subsequently reviewed Google Map images of the alley's westbound entrance off 6th St. which date from 2024 through 2011. "One-Way" signs were not present at this location in 2024, 2023, and 2022. However, a "One-Way" sign was present at the alley's western entrance (off 6th St.) from 2021 through 2011 (albeit on the east side of 6th St.). On July 20 (2025) I also drove throughout downtown Boise inspecting all alleys and discovered most did not contain One-Way or Do Not Enter signs—which I also later confirmed on Google Maps. (Plaintiff's Exhibit 32.)

40. West Grove Street is a westbound one-way street that enters Capitol Blvd. approximately 165-feet south of where the alley I was seized enters Capitol Blvd. I have subsequently reviewed Google Map images of the intersection where Grove St. enters Capitol

Blvd., which date back to 2007. Since 2007 the intersection where Grove St. enters Capitol Blvd. has contained at least one (and at times two) large conspicuous "Do Not Enter" signs.

41. After learning of my intent to file my lawsuit the City of Boise asked ACHD to install "Do Not Enter" and "One-Way" signs at both the westbound alley entrance off 6th St. as well the eastbound entrance off Capitol Blvd. And in fact, since filing my lawsuit (in January of 2026) I have discovered that the City has caused to be installed One-Way and/or Do Not Enter signs in most if not all downtown alleys.

42. Returning to July 20, 2025, at approximately 1:30 a.m., I pulled into the alley to pick up my rideshare customers. There were no vehicles in the alley when I entered. Had the alley's eastern entrance off Capitol Blvd. contained "Do Not Enter" or "One-Way" signs I never would have entered the alley from Capitol Blvd. When I pulled into the alley I believed it was legal because there were no signs preventing entry off Capitol Blvd. or signs indicating that the alley was a one-way and that only westbound travel was authorized. To this day I believe it was absolutely legal to enter the alley off Capitol Blvd. on July 20 (2025) owing to the lack of required signage.

43. Immediately after entering the alley my headlights illuminated the backs of two police officers who were walking eastbound down the middle of the alley. The officers—whom I later learned were Boise Police Officers Alan Viens and Bryce Bienz—were approximately 50-75 feet from the Capitol Blvd. entrance. Both officers were armed and in uniform. The officers were walking in the same direction I was driving (i.e. eastbound). After noticing my vehicle, Officer Viens turned around and planted himself firmly in the middle of the alley physically blocking my freedom of movement. I could not proceed forward because Officer Viens was standing in my lane of travel blocking the alley. I could not turn left (north) because there was a

building there. I could not turn right (south) as there was a metal fence separating the alley from a parking lot. I also could not back up out of the alley because the alley is surrounded on both sides by tall buildings that significantly limited my sightlines. I could not reverse out of the alley because doing so would have been extremely dangerous as it would have required me to back into an extremely busy road (Capitol Blvd.) without the ability to see oncoming traffic—which was especially dangerous given the significant amount of late-night pedestrian and vehicle traffic due to nearby bars and club activity. Accordingly, from the second Officer Viens stood in front of my vehicle—at 1:35:38—I did not feel like I was free to terminate the encounter because there was nowhere for me to go at that point.

44. As can be seen on Officer Bienz's BWC footage, after standing in front of my vehicle for several seconds Officer Viens began walking towards my driver's side window. He was yelling and gesturing at me in an aggressive manner. Initially I had no idea what Officer Viens was attempting to communicate because I could not hear what he was saying. Note that the audio from the officers' BWC did not capture what Officer Bienz said because neither had turned them on at that point in time. It is my understanding that once an officer turns on his or her bodycam the video itself rewinds and includes the previous 30-seconds in the recording, but the audio portion is not included in that 30-second lookback. In other words, audio is not recorded until the officer activates his or her bodycam, but once s/he does so, video from 30-seconds before the activation will be included in the recording (albeit without audio).

45. In his declaration Officer Viens asserts that, "[u]pon observing Mr. Forland enter the Alley eastbound from Capitol Blvd., I approached the Jeep and attempted to educate Mr. Forland that he was going the wrong direction down the Alley. I motioned to Mr. Forland to back up and stated several times that he was going the wrong direction. Mr. Forland tilted his head out

of the driver's side window and began yelling something I did not hear because I had earbuds connected to my radio in both of my ears. I motioned to my ears and repeated my command that Mr. Forland back up and go the other direction because he was driving the wrong way down the Alley. Mr. Forland did not comply. Instead, Mr. Forland was yelling and arguing with me. He was agitated and confrontational. I repeated to Mr. Forland to go back in the direction he came. He did not comply with my commands and instead accused me of yelling and being disrespectful. Approximately 10 to 15 seconds after I began communicating with Mr. Forland, Officer Bienz approached Mr. Forland and requested his driver's license, vehicle registration, and proof of insurance." (Dkt. 13-4, ¶5.)

46. I dispute some of Officer Viens' statement. To be clear, I do not dispute that after I came to a stop in the alley (because Officer Viens was standing in my path), Officer Viens walked towards my driver's side window where he began yelling something at me and motioning with his arms, but initially I had no idea what he was trying to communicate as I could not hear him. What I do know for certain is that whatever Officer Viens was doing it could not be characterized as "education." Also as noted above, even if I knew he was trying to communicate to me to back out of the alley that was not possible given that it would have been incredibly dangerous and foolish. I do agree that I stuck my head out the window and yelled back at Officer Viens that I couldn't hear him and further agree that I told him he was being disrespectful and even asked him, "why he was being an asshole?"

47. In his declaration Officer Viens further asserts that, "I do not have [any] recollection of Mr. Forland stating such things to me, cursing, or otherwise calling me derogatory names." (Dkt. 13-4, ¶7.) I dispute this statement. It was abundantly clear to me from Officer Viens' aggressive body language and tone that he absolutely heard me call him an asshole and

didn't like the fact that I was calling him out for his rudeness and unprofessional behavior in light of me entering an unsigned alley. In the BWC footage you can clearly hear that Officer Viens' tone is elevated. Officer Viens even admitted that he speaks to people as though he is yelling at them—but attempted to justify this conduct by claiming he doesn't hear well. I perceived Officer Viens' approach as disrespectful and confrontational. His posture appeared rigid, his facial expression appeared stern and condemning, and he spoke to me in a condescending tone—further evidencing that he heard me call him an asshole.

48. Similar to Officer Viens, in his declaration Officer Bienz asserted that, "I understand Mr. Forland has alleged that he called Officer Viens and me 'fucking assholes' during the encounter on July 20, 2025. If Mr. Forland did call either Officer Viens or I 'fucking assholes,' I did not hear him state that. I watched my body camera video attached as Exhibit G and I did not hear him curse or use derogatory language toward Officer Viens or me." (Dkt. 13-3, ¶12.) I dispute this statement. It was abundantly clear to me that Officer Bienz heard me ask Officer Viens why he was being an asshole because *immediately* after I said those words Officer Bienz quickly walked to my driver's window and ordered me to provide my driver's license, registration, insurance etc.—which I did. Note that the reason you cannot hear me ask Officer Viens why he was being an asshole on either of the officers' BWC footage is because there is no audio for the first 30-seconds because the officers failed to turn on their bodycams during the initial portion of my seizure—which of course I have no control over.

49. Eventually I was able to discern that Officer Viens was trying to tell me I was driving the "wrong direction." I responded by explicitly telling Officer Viens that I had not seen any signage indicating that the alley was a one-way or that I was prohibited from entering the alley the way I did (i.e. eastbound). This was not captured on the officers' BWC footage either.

I felt confused, tense, and alarmed by Viens' aggressive and disrespectful conduct—most notably his body language as can be seen on Officer Bienz's BWC footage. Remembering that I had just pulled into an alley containing no signage prohibiting eastbound entry, yet I was suddenly confronted by two-armed officers who blocked my path of travel and were acting hyper aggressively towards me. I felt that I was being addressed in an unjustified, condescending, and disrespectful manner.

50. I do not dispute that for the first couple minutes of the encounter I continued to educate the officers that they should change their unprofessional and rude demeanor, which is captured on both officers' BWC footage. More specifically, I attempted to educate the officers that their conduct was inappropriate and tried to explain to them that they were "forward facing" i.e. the face of the government and the way they were treating me was inappropriate. I reiterated that they should "just be nice to people" and that they should "work on that." Officer Viens continued to interrupt me and deflect from addressing my concerns. Throughout the encounter I was calm and respectful (my salty language at the outset notwithstanding). It was evident to me from the outset that the officers were attempting to punish me for speaking out and continuing to educate them about their unprofessional behavior by unnecessarily prolonging my seizure and later by issuing me a citation for violating I.C. § 49-636 despite the clear lack of signage at the alley's eastern entrance as required.

51. After Officer Bienz took my license etc. I again told Officer Viens that I had not done anything wrong nor broke the law. Officer Viens responded that I did break the law by "driving the wrong way down an alley" and that Officer Bienz would be "writing me a ticket" for it. I responded by saying "I'm sorry I didn't see that." This was the second time I informed the officers that I had not seen any signage prohibiting entering the alley from the east (off Capitol

Blvd.). At no point during the entire interaction did either officer mention the word "sign." At no point did either officer even suggest that they believed the alley was actually signed or needed to be signed (for one-way travel). At no point during the interaction did either officer walk the 50-75 feet over to where the required sign(s) would have been located had they existed. This is despite the fact that I was cited for violating I.C. § 49-636—a statute of less than 30 words, which explicitly advises that a vehicle "shall be driven only in the direction designated at all or such times as ***shall be indicated by traffic-control devices***." I recently returned to the alley and confirmed that from where the officers were standing it takes approximately 15-18 seconds to walk over and touch the newly installed "Do Not Enter" and "One-Way" signs the City caused to be installed at the alley's east entrance off Capitol Blvd. I am aware the officers now contend that they could not walk the 50-75 feet over to check for a sign during my 6.5-minute seizure because I was being non-compliant. The BWC footage shows this is false—as I was anything but non-compliant. Additionally, I have no criminal record which the officers would have known the moment they ran my license.

52. As can also be seen on the BWC footage, my seizure began at 1:35:38 when Officer Viens stood in front of my vehicle and blocked my travel. My seizure ended at 1:42:08, meaning my seizure lasted for 6.5-minutes. Officer Bienz had all my information (license, insurance, registration, etc.) at 01:37:20, meaning he had my information for over 5-minutes of the 6.5-minute seizure. Note that prior to Officer Bienz receiving my information Officer Viens had already run my license plate as discussed on the officers' BWC footage. In other words, because Officer Viens had already called in my plates etc., the only thing Officer Bienz had to do was issue a citation using an e-citation device that auto-populates the driver's information. This should have been an extremely fast process. To illustrate, Tyler Technologies advertises that

officers can, using its Enforcement Mobile Electronic Citation module, "complete a traffic stop in less than 90 seconds." (See Plaintiff's Exhibit 31, at 7.). Yet as can easily be seen on Officer Bienz's BWC, after taking possession of my driver's license, insurance, etc. Officer Bienz went and stood near my rear passenger door for over 3.5-minutes where he can be seen continuously scrolling through his phone/ e-citation device as though he was looking for something e.g. the (previously repealed) City Code that declared certain downtown alleys westbound one-ways.

53. At 1:40:50 my rideshare customers—tired of waiting for me—decided to walk the rest of the way down the alley and get into my vehicle. To allow my rideshare customers to get into my vehicle—at approximately 01:41:00—Officer Bienz stepped away from my rear passenger door and walked back behind my vehicle a few steps where he can be seen on his BWC footage working quickly on his e-citation device. After getting in the vehicle my rideshare passengers appeared upset by the situation and asked me why I was being stopped and why we couldn't leave. I told them the officers claimed I had been driving the wrong way down the alley and were issuing me a citation for this violation. The passengers responded and said the alley is not marked or designated as a one-way. Approximately 45-seconds later Officer Bienz returned to my window and gave me a citation for violating I.C. § 49-636, which carried a $90 penalty.

54. When Officer Bienz handed me the citation he said words to the effect of "here's this." I perceived the citation I received (as well as the prolonged seizure beforehand) as punishment for my criticizing the officers' conduct during the initial portion of the encounter. It was clear to me the officers were retaliating against me for my criticism of their unprofessional behavior. I also believe the officers knew they lacked reasonable suspicion to seize me and probable cause to cite for violating I.C. § 49-636 because the alley was not signed—which I believe the officers also were aware of at that time.

55. I further believe now—as I did at the time—that the officers unlawfully prolonged my seizure which clearly lasted longer than reasonably necessary under the circumstances. The length of the stop negatively affected the customer service I provided my rideshare customers given that they were forced to walk to my vehicle and then wait inside while the officers completed their seizure of me.

56. Note that approximately 5-minutes into the seizure I asked the officers how they wanted me to leave and if I should try and turn around. Officer Viens responded by telling me to "just keep going through"—which frankly was the only reasonable option. I asked if they wanted me to turn around even though I knew that was impossible. Officer Viens then confirmed my thought exactly, opining that there wasn't room to turn around unless I wanted to try an "Austin Powers"—referring to the very funny scene in the movie "Austin Powers – The International Man of Mystery", which can be viewed at the link in the footnote below.6 I specifically did not ask the officers if I should back up because I knew that would have been incredibly dangerous. At the conclusion of the stop, I drove eastbound out of the alley (as Officer Viens had previously advised)—as that was the only way I could go. Upon exiting the alley onto 6th St. I noticed there was no one-way signage at the alley's western entrance either.

57. From where Officer Bienz was standing behind my vehicle during the final 45-seconds of my seizure he would have been approximately 50-feet from the "Do Not Enter" and "One-Way" signs the City recently caused to be installed at the alley's eastern entrance off Capitol Blvd. As can be seen in the image below—also provided as Plaintiff's Exhibit 7—the (back of) the newly installed Do Not Enter and (a stop sign if looking west) and the One-Way sign are both highly visible from the exact location where the officers were standing during my

6 https://www.youtube.com/watch?v=aULRhgG_Az8

6.5-minute seizure:




58. However, as noted above, on the night of July 20 (2025) there were no signs at the alley's entrance off Capitol Blvd. as can easily be seen on Officer Bienz's BWC footage in the picture below (also provided as Plaintiff's Exhibit 19):




59. As the two images above illustrate (Plaintiffs Exhibits 7 & 19), the officers did not even have to walk the 50-75 feet to Capitol Blvd. to know there was not a Do Not Enter or One-Way sign at that entrance because if there were, the signs would have been highly visible from the exact location where the officers were standing for the duration of my 6.5-minute seizure.

60. Because I was almost certain the alley wasn't signed, on the afternoon of July 20 (2025) I drove back to the alley to verify my belief that the alley was not properly signed. When I arrived I observed that, as I had thought, there were no One-Way or Do Not Enter signs, pavement arrows, or other traffic-control devices at the Capitol Blvd. (or the 6th St. entrance for that matter) indicating that eastbound travel was prohibited in the alley.

61. After confirming the alley was not signed I requested a court date to contest the citation (case number CR01-25-27004). I also submitted a formal complaint with the Boise Police Department regarding Officers Bienz and Viens. Boise Deputy City Attorney Angelica M. Gonzalez was assigned to my traffic citation case. A short time later Ms. Gonzalez called me and told me she personally went down to the alley and observed there was no signage or anything indicating the alley was a one-way or that eastbound travel was prohibited—so she was going to file a motion to dismiss (which the Magistrate Court summarily granted).

62. On July 25, 2025, at approximately 2:09 p.m., Boise Police Department Sergeant Matt Jacobs called me regarding the complaint I submitted to the Boise Police Department and asked for my perspective on the events that occurred during the stop. During the call, Sergeant Jacobs defended Officer Vien's and Bienz's behavior and even went so far as to characterize their conduct as "professional." Sgt. Jacobs also said something to the effect that I'm sure the officers told you all downtown alleys are westbound one-ways, which has been the law "for years." I specifically pointed out to Sgt. Jacobs that the alley was not signed as required by state law and in response he quipped, "I am with you, the City should put signs up… I'll give you that much." I again reiterated to Sgt. Jacobs that the lack of signage rendered the ticket "bullshit" and that "it was a bullshit stop in the first place." I pleaded with Sgt. Jacobs to "show it me… I would love to see it" referring to the law designating downtown alleys as westbound one-ways. In response Sgt. Jacobs said, "it is going to take some digging on my part to find it" but emphasized "its been around forever" and that he would look for it and email it to me or I could look it up in the Boise City Code. During the call I explicitly told Sgt. Jacobs that the officers had cited me because of bruised egos and to make my life more difficult and because I called Officer Viens an asshole—which was obviously retaliatory. I also made clear during my call with Sergeant Jacobs that

complaint was not limited to the officers' unprofessional demeanor; to the contrary, I was primarily challenging the legal basis for my unlawful seizure and the First Amendment retaliation that followed. Based on my conversation with Sgt. Jacobs I understood the City's official position to be that the officers' conduct and specifically their reliance on the unwritten rule that downtown alleys are one-ways (westbound) was lawful and within policy.

63. On September 3, 2025, Boise Police Chief Christopher Dennison issued a Citizen Findings Letter in relation to my complaint against the Officers. In his letter Chief Dennison asserts that his department "seriously" investigated my complaint and concluded there was insufficient evidence to find that Officer Bienz or Viens violated law or policy. Based on Chief Dennison's letter, I understood the City's final position to be that the officers' conduct, the citation, and reliance on the unwritten rule that downtown alleys are one-ways (westbound) was lawful and within policy.

64. I also filed a complaint with Boise's Office of Police Accountability. On October 9, 2025, Kathie Brack, a Case Administrator with the Office of Police Accountability sent me an email regarding OPA Complaint number 25-0061 and her final findings. Of import here, the OPA determined that "regardless of signage" traveling the wrong way down a one-way alley [which it wasn't] posed a safety risk and that the officers' issuing me a citation was both "appropriate and within policy." Based on the letter from the OPA I understood the City's official position was that the officers' conduct and specifically their reliance on the unwritten rule that downtown alleys are one-ways (westbound) was lawful and within policy regardless of whether the alley was signed or not.

65. Prior to filing my lawsuit, I sent the City a Tort Notice as well as a prelitigation letter attempting to resolve the issue without litigation. The City never responded to either my

tort notice or my prelitigation letter. In fact, after the OPA provided its findings on October 9th, 2025, the City never engaged in any attempt to clarify their position on the matter. Accordingly, I was left with no alternative but to file my lawsuit, which I did on January 16, 2026.

Brandon Forland — 05/22/2026

Brandon Forland, Plaintiff — Date Executed