# Plaintiff's Exhibit 23

Plaintiffs Exhibit 23 is a recording of Mr. Forland's December 19, 2025, phone conversation with Ada County Highway District (ACHD) employees Dave Sirdar and Josh Saak. Below is a Dropbox link to the recording:

https://www.dropbox.com/scl/fi/two6mbpslglfbe3dq9cbc/Call-Recording.m4a?rlkey=ct9r2444iucjfgrzxyg27uk7r&st=a0rnfk6u&dl=0

# Plaintiff's Exhibit 24

**BOISE POLICE DEPARTMENT**
MAYOR: Lauren McLean | CHIEF: Christopher Dennison

September 3, 2025

Brandon Forland
2904 North Leblanc Way
Meridian, ID 83646

Dear Brandon:

This letter is to inform you of the conclusion of the Boise Police Department's investigation into the concern that you filed on July 21, 2025. The Idaho Public Records Act prohibits the release of personnel information, so I am limited in what I am able to share with you.

The mission of the Boise Police Department is to "Protect, Serve, and Lead our Community to a Safer Tomorrow." The manner in which Boise Police Department officers interact with and provide service to the public is of paramount importance to me. We take every complaint and concern we receive seriously. We have reviewed the matter, including all reports, audio/video, and other materials, as well as conducted any necessary interviews or further investigation.

Based upon the investigation, the Department determined there is insufficient evidence to conclude that an officer or Department employee violated law or policy. If you still have concerns or would like to request a review of the Department's investigation, be conducted, please do not hesitate to contact the Office of Police Accountability at 208-972-8380. The Office of Police Accountability has the authority to review our internal investigations to ensure they are thorough, complete, accurate, and objective.

Thank you for bringing this matter to our attention so that we have the opportunity to evaluate our performance, be responsive to citizens' concerns, and ensure we continue to strive to deliver the highest level of service to our community.

Sincerely,

Christopher Dennison
Chief of Police

# Plaintiff's Exhibit 25

**From:** Kathie Brack <kbrack@cityofboise.org>
**Sent:** Thursday, October 9, 2025 12:25 PM
**To:** forland.brandon@outlook.com <forland.brandon@outlook.com>
**Subject:** OPA Complaint #25-0061

Mr. Forland,

Thank you for bringing your concerns to our attention regarding your recent interaction with BPD officers in the downtown alleyway. We take all reports of officer conduct seriously and have conducted a thorough review of the information surrounding your complaint.

According to our findings, the incident occurred while officers were on foot patrol and observed your vehicle traveling the wrong direction down a one-way alley. The officers attempted to get your attention to inform you of the traffic violation and prevent a potential safety hazard. At that point, their body-worn cameras had not yet been activated, as they did not anticipate a direct interaction or the need for enforcement action. The officers reported that their intention was simply to have you stop and correct your direction of travel.

Once it became clear that you wished to further engage beyond the initial directive, both officers activated their body-worn cameras, in accordance with department policy. While the initial interaction was not captured, the remainder of the encounter with officers was recorded on video.

You expressed concern that the officers' tone and body language appeared rude and aggressive, and that a citation was issued in response to your challenge of their authority. As part of our review, we examined the officers' body-worn camera footage as well as the audio recording of your subsequent conversation with a supervising sergeant.

The available recordings do not support the allegation that the officers behaved in a rude, unprofessional, or aggressive manner. Rather, the footage shows that you were verbally confrontational and used profanity during the encounter, seemingly in reaction to what you perceived as inappropriate behavior by the officers. While we are unable to review the tone used during the officers' initial verbal directive—since it was not recorded—it is reasonable to assume their communication carried urgency and authority, as they were addressing a traffic safety concern from a distance. It is understandable that such communication might have been perceived as abrupt or unprofessional, though it appears to have been intended to ensure immediate compliance for safety reasons.

Whether your response influenced the officers' decision to issue a citation is not a determining factor in evaluating a policy violation. Officers have the authority and discretion to issue citations when warranted. In this case, regardless of signage, traveling the wrong way down a one-way alley posed a safety risk, and the issuance of a citation was appropriate and within policy.

We recognize that interactions with law enforcement can be stressful and we encourage respectful communication from all parties to help ensure safe and productive encounters. Thank you for contacting the Office of Police Accountability. The mission of this office is to provide transparency into policing for the citizens of Boise and to assess policing in our community, help strengthen community relations between law enforcement and Boise's citizens and inform changes in training and practices of the Boise Police Department.

Regards,

BOISE CITY OF TREES

Kathie Brack
*Case Administrator*
Office of Police Accountability
Office: (208) 972-8380
kbrack@cityofboise.org
cityofboise.org

*Creating a city for everyone.*

Plaintiff's Exhibit 26

# Incident Detail Report

Data Source: **Data Warehouse**
Incident Status: **Closed**
Incident number: **25-0240000**
Case Numbers:
Incident Date: **7/20/2025 01:36:54**
Report Generated: **8/19/2025 10:44:57**

## Incident Information

| | | | |
|---|---|---|---|
| **Incident Type:** | Response 19 | **Alarm Level:** | |
| **Priority:** | P2 - High Priority | **Problem:** | TS-Traffic Stop |
| **Determinant:** | | **Agency:** | Law Enforcement |
| **Base Response#:** | VAL225-0154923 | **Jurisdiction:** | Boise PD |
| **Confirmation#:** | 07202025-0217310 | **Division:** | Boise PD Valley 2 |
| **Taken By:** | Murray, Ryun | **Battalion:** | Boise PD Valley 2 |
| **Response Area:** | BPDV2 | **Response Plan:** | No Recommend - 19 |
| **Disposition:** | CIT-Citation/Complaint/Summon | **Command Ch:** | |
| **Cancel Reason:** | | **Primary TAC:** | |
| **Incident Status:** | Closed | **Secondary TAC:** | |
| **Certification:** | | **Delay Reason (if any):** | |
| **Longitude:** | 116202129 | **Latitude:** | 43614719 |

## Incident Location

| | | | |
|---|---|---|---|
| **Location Name:** | HANNAHS | **County:** | ADA COUNTY |
| **Address:** | 621 W MAIN ST | **Location Type:** | Bar/Nightclub |
| **Apartment:** | | **Cross Street:** | S 6TH ST/S CAPITOL BLVD |
| **Building:** | | **Map Reference:** | N32 |
| **City, State, Zip:** | BOISE ID 83702 | | |

## Supplemental Information - Vehicle

**VEHICLE 1**

| | | | |
|---|---|---|---|
| **License:** | DV1PX - ID - PC | **Color1:** | WHI |
| **Plate Year:** | 2027 | **Make:** | Jeep |
| **Model:** | GRAND CHEROKEE | **Style:** | LL |
| **Make Year:** | 2022 | **VIN:** | 1C4RJFBG3NC140602 |

## Call Receipt

| | | | |
|---|---|---|---|
| **Caller Name:** | | | |
| **Method Received:** | | **Call Back Phone:** | |
| **Caller Type:** | | **Caller Location:** | |
| **Caller Address:** | | **Caller Location Phone:** | |
| **Caller Building:** | B019 | **Caller Apartment:** | |
| **Caller City, State, Zip:** | | **Caller County:** | |

## Time Stamps

| Description | Date | Time | User |
|---|---|---|---|
| Phone Pickup | 7/20/2025 | 01:36:54 | |
| 1st Key Stroke | 7/20/2025 | 01:36:54 | |
| In Waiting Queue | 7/20/2025 | 01:36:54 | |
| Call Taking Complete | 7/20/2025 | 01:36:54 | Murray, Ryun |
| 1st Unit Assigned | 7/20/2025 | 01:36:54 | |
| 1st Unit Enroute | 7/20/2025 | 01:36:54 | |
| 1st Unit Arrived | 7/20/2025 | 01:36:54 | |
| Closed | 7/20/2025 | 01:43:47 | Murray, Ryun |

## Elapsed Times

| Description | Time |
|---|---|
| Received to In Queue | 00:00:01 |
| Call Taking | |
| In Queue to 1st Assign | 00:00:00 |
| Call Received to 1st Assign | 00:00:00 |
| Assigned to 1st Enroute | 00:00:00 |
| Enroute to 1st Arrived | 00:00:00 |
| Incident Duration | 00:06:53 |

## Resources Assigned

| Unit | Primary Flag | Assigned | Disposition | Enroute | Staged | Arrived | At Patient | Delay Avail | Complete | Odm. Enroute | Odm. Arrived | Cancel Reason |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 36T7 | Y | 01:36:54 | CIT-Citation/Complaint/Summon | 01:36:54 | | 01:36:54 | | | 01:42:50 | | | |
| 3680 | N | 01:39:24 | | 01:39:24 | | | | | 01:43:45 | | | |
| 3682 | N | 01:39:28 | | 01:39:28 | | | | | 01:43:47 | | | |

## Personnel Assigned

| Unit | Name |
|---|---|
| 36T7 | Bienz, Bryce (BP1119); Viens, Allan J (BP759) |
| 3680 | Jacobs, Matt [SGT] (BP786) |
| 3682 | Echols, Alexander (BP943); Stall, Mark (Silent Partner) (BP512) |

## Caution Notes

| Caution Notes | Type | Priority |
|---|---|---|
| [redacted] | [redacted] Address | [redacted] Medium |

## Permits

No Permit Information

## Pre-Scheduled Information

| | | | |
|---|---|---|---|
| 7/20/2025 01:36:58 | TowedBy | | Record ID 1484530 Supplement IncidentSupplementVehicle ECFCADWEB01TTMSInterface Vehicle Record Edited. Record ID 1484530 |
| 7/20/2025 01:36:58 | VehicleColor1 | WHI | Supplement IncidentSupplementVehicle ECFCADWEB01TTMSInterface Vehicle Record Edited. Record ID 1484530 |
| 7/20/2025 01:36:58 | VehicleColor2 | | Supplement IncidentSupplementVehicle ECFCADWEB01TTMSInterface Vehicle Record Edited. Record ID 1484530 |
| 7/20/2025 01:36:58 | VehicleMake | JEEP | Supplement IncidentSupplementVehicle ECFCADWEB01TTMSInterface Vehicle Record Edited. Record ID 1484530 |
| 7/20/2025 01:36:58 | VehicleMakeYear | 2022 | Supplement IncidentSupplementVehicle ECFCADWEB01TTMSInterface Vehicle Record Edited. Record ID 1484530 |
| 7/20/2025 01:36:58 | VehicleModel | GRAND CHEROKEE | Supplement IncidentSupplementVehicle ECFCADWEB01TTMSInterface Vehicle Record Edited. Record ID 1484530 |
| 7/20/2025 01:36:58 | VehicleStyle | LL | Supplement IncidentSupplementVehicle ECFCADWEB01TTMSInterface Vehicle Record Edited. Record ID 1484530 |
| 7/20/2025 01:36:58 | VIN | 1C4RJFBG3NC140602 | Supplement IncidentSupplementVehicle ECFCADWEB01TTMSInterface Vehicle Record Edited. Record ID 1484530 |

Custom Time Stamps

**No Custom Time Stamps**

Custom Data Fields

| **Description** | **Data** | **User** |
|---|---|---|
| Workstation | MachineName | AssignmentSvc |
| Call Taken By | Murray, Ryun | AssignmentSvc |

Attachments

| **Description** | **Date** |
|---|---|
| | 7/20/2025 01:37:08 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7/20/2025 01:36:54 | Location Type | | Bar/Nightclub | New Entry | Incident | D11 | SO5447 |
| 7/20/2025 01:36:54 | Latitude | 0 | 43614719 | New Entry | Incident | D11 | SO5447 |
| 7/20/2025 01:36:54 | Longitude | 0 | 116202129 | New Entry | Incident | D11 | SO5447 |
| 7/20/2025 01:36:54 | Division | | Boise PD Valley 2 | New Entry | Incident | D11 | SO5447 |
| 7/20/2025 01:36:54 | Battalion | | Boise PD Valley 2 | New Entry | Incident | D11 | SO5447 |
| 7/20/2025 01:36:54 | Jurisdiction | | Boise PD | New Entry | Incident | D11 | SO5447 |
| 7/20/2025 01:36:54 | Home Sector | 0 | 33 | New Entry | Incident | D11 | SO5447 |
| 7/20/2025 01:36:54 | Current Sector | 0 | 33 | New Entry | Incident | D11 | SO5447 |
| 7/20/2025 01:36:54 | Cross Street | | S 6TH ST/S CAPITOL BLVD | New Entry | Incident | D11 | SO5447 |
| 7/20/2025 01:36:54 | House Number | | 621 | New Entry | Incident | D11 | SO5447 |
| 7/20/2025 01:36:54 | Response Area | | BPDV2 | New Entry | Incident | D11 | SO5447 |
| 7/20/2025 01:36:55 | Problem Name | | TS-Traffic Stop | (Response Viewer) | Incident | D11 | SO5447 |
| 7/20/2025 01:36:55 | PriorityName | | P2 - High Priority | (Response Viewer) | Incident | D11 | SO5447 |
| 7/20/2025 01:36:55 | PriorityNumber | 0 | 3 | (Response Viewer) | Incident | D11 | SO5447 |
| 7/20/2025 01:36:55 | Incident Type Name | | Response 19 | (Response Viewer) | Incident | D11 | SO5447 |
| 7/20/2025 01:36:55 | Response Plan Name | | No Recommend - 19 | (Response Viewer) | Incident | D11 | SO5447 |
| 7/20/2025 01:36:55 | Response Plan Type | Unassigned | Dynamic | (Response Viewer) | Incident | D11 | SO5447 |
| 7/20/2025 01:36:55 | Dispatch Level | | Default | (Response Viewer) | Incident | D11 | SO5447 |
| 7/20/2025 01:36:55 | Unread Comment | False | True | (Response Viewer) | Incident | D11 | SO5447 |
| 7/20/2025 01:36:55 | Workstation | | MachineName | (Response Viewer) | Incident | ECFCADWEB01 | AssignmentSvc |
| 7/20/2025 01:36:55 | Call Taken By | | Murray, Ryun | (Response Viewer) | Incident | ECFCADWEB01 | AssignmentSvc |
| 7/20/2025 01:36:55 | Map Info | | N32 | (Response Viewer) | Incident | D11 | SO5447 |
| 7/20/2025 01:36:55 | Caller Building | | B019 | (Response Viewer) | Incident | D11 | SO5447 |
| 7/20/2025 01:36:55 | Map_Info | | N32 | Polygon Lookup | Response_Master_Incident | D11 | SO5447 |
| 7/20/2025 01:36:55 | Caller_Building | | B019 | Polygon Lookup | Response_Master_Incident | D11 | SO5447 |
| 7/20/2025 01:36:55 | LicensePlateYear | | 2022 | Supplement Vehicle Record Edited. Record ID 1484530 | IncidentSupplementVehicle | ECFCADWEB01 | TTMSInterface |
| 7/20/2025 01:36:55 | TowedBy | | | Supplement Vehicle Record Edited. Record ID 1484530 | IncidentSupplementVehicle | ECFCADWEB01 | TTMSInterface |
| 7/20/2025 01:36:55 | VehicleColor2 | | | Supplement Vehicle Record Edited. Record ID 1484530 | IncidentSupplementVehicle | ECFCADWEB01 | TTMSInterface |
| 7/20/2025 01:36:58 | Characteristics | | | Supplement Vehicle Record Edited. Record ID 1484530 | IncidentSupplementVehicle | ECFCADWEB01 | TTMSInterface |
| 7/20/2025 01:36:58 | Comments | | | Supplement Vehicle Record Edited. Record ID 1484530 | IncidentSupplementVehicle | ECFCADWEB01 | TTMSInterface |
| 7/20/2025 01:36:58 | LicensePlateTypePC | | | Supplement Vehicle Record Edited. Record ID 1484530 | IncidentSupplementVehicle | ECFCADWEB01 | TTMSInterface |
| 7/20/2025 01:36:58 | LicensePlateYear | 2022 | 2027 | Supplement Vehicle Record Edited. | IncidentSupplementVehicle | ECFCADWEB01 | TTMSInterface |

**No Pre-Scheduled Information**

Transports

**No Transports Information**

Transport Legs

**No Transports Information**

Comments

| Date | Time | User | Type | Conf. | Comments |
|---|---|---|---|---|---|
| 7/20/2025 | 01:36:55 | Automatic By System | Response | | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | | |
| 7/20/2025 | 01:36:55 | SO5447 | Response | Y | [3] [Query] 36T7, PL - Vehicle Plate Inquiry LIC/DV1PX.LIS/ID.LIT/PC.LIY/2022.DST1/ID. |
| 7/20/2025 | 01:37:01 | SO5447 | Response | | [4] 36T7 ALLEY BHND HANNA |
| 7/20/2025 | 01:37:08 | BP759 | Response | Y | [5] DV1PX, ID, PC, 2022, ID (Req: 3590253) [TabTitle:DMV/RR, Priority: , Time:7/20/2025 - 01:37:08] was attached to the incident. |
| 7/20/2025 | 01:39:24 | SO5447 | Response | | [6] Backed up 36T7 with 3680 |
| 7/20/2025 | 01:39:28 | SO5447 | Response | | [7] Backed up 36T7 with 3682 |

Address Changes

**No Address Changes**

Priority Changes

**No Priority Changes**

Alarm Level Changes

**No Alarm Level Changes**

Activity Log

| Date | Time | Radio | Activity | Location | Log Entry | User |
|---|---|---|---|---|---|---|
| 7/20/2025 | 01:36:54 | 36T7 | Dispatched | [redacted] W MAIN ST | 621 W MAIN ST; Response Number: VAL225-0154923; | SO5447 |
| 7/20/2025 | 01:36:54 | 36T7 | Enroute | 621 W MAIN ST [HANNAHS] | Responding From = [redacted] W MAIN ST. | SO5447 |
| 7/20/2025 | 01:36:54 | 36T7 | On Scene | 621 W MAIN ST [HANNAHS] | | SO5447 |
| 7/20/2025 | 01:36:55 | | Problem Nature | 621 W MAIN ST | Incident problem nature changed from <Blank> to TS-Traffic Stop | SO5447 |
| 7/20/2025 | 01:36:55 | | Read Comment | 621 W MAIN ST | Comment for Incident 435 was marked as read. | SO5447 |
| 7/20/2025 | 01:36:55 | | Supplemental Information | 621 W MAIN ST | Supplemental Vehicle record 1484530 was added for license plate DV1PX | SO5447 |
| 7/20/2025 | 01:36:55 | | License Plate | 621 W MAIN ST | Plate Number DV1PX has been added. | SO5447 |
| 7/20/2025 | 01:36:55 | 36T7 | [Query] | 621 W MAIN ST [HANNAHS] | PL - Vehicle Plate Inquiry LIC/DV1PX.LIS/ID.LIT/PC.LIY/2022.DST1/ID. | SO5447 |
| 7/20/2025 | 01:39:24 | 3680 | Dispatched | [redacted] N 6TH ST | 621 W MAIN ST; Response Number: VAL225-0154925; | SO5447 |
| 7/20/2025 | 01:39:24 | 3680 | Enroute | 621 W MAIN ST [HANNAHS] | Responding From = [redacted] N 6TH ST. | SO5447 |
| 7/20/2025 | 01:39:24 | 36T7 | Unit Backed up | [redacted] W MAIN ST | Backed up with 3680 | SO5447 |
| 7/20/2025 | 01:39:28 | 3682 | Dispatched | | 621 W MAIN ST; Response Number: VAL225-0154926; | SO5447 |
| 7/20/2025 | 01:39:28 | 36T7 | Unit Backed up | [redacted] W MAIN ST | Backed up with 3682 | SO5447 |
| 7/20/2025 | 01:42:14 | | UserAction | 621 W MAIN ST | User clicked Save & Exit | SO6346 |
| 7/20/2025 | 01:42:50 | 36T7 | Available | 621 W MAIN ST [HANNAHS] | Unit Cleared From Incident 25-0240000 | SO6583 |
| 7/20/2025 | 01:43:45 | 3680 | Available | 621 W MAIN ST [HANNAHS] | Unit Cleared From Incident 25-0240000 | SO5447 |
| 7/20/2025 | 01:43:47 | 3682 | Available | 621 W MAIN ST [HANNAHS] | Unit Cleared From Incident 25-0240000 | SO5447 |
| 7/20/2025 | 01:43:47 | 3682 | Response Closed | HANNAHS | Response Disposition: | SO5447 |

Edit Log

| Date | Time | Field | Changed From | Changed To | Reason | Table | Workstation | User |
|---|---|---|---|---|---|---|---|---|
| 7/20/2025 | 01:36:54 | Agency Name | | Law Enforcement | (Response Viewer) | Incident | D11 | SO5447 |
| 7/20/2025 | 01:36:54 | Address | | 621 W MAIN ST | New Entry | Incident | D11 | SO5447 |
| 7/20/2025 | 01:36:54 | NewCity | | BOISE | New Entry | Incident | D11 | SO5447 |
| 7/20/2025 | 01:36:54 | NewCounty | | ADA COUNTY | New Entry | Incident | D11 | SO5447 |
| 7/20/2025 | 01:36:54 | NewState | | ID | New Entry | Incident | D11 | SO5447 |
| 7/20/2025 | 01:36:54 | Postal Code | | 83702 | New Entry | Incident | D11 | SO5447 |
| 7/20/2025 | 01:36:54 | PremiseID | 0 | 1647 | Premise Verified | Incident | D11 | SO5447 |
| 7/20/2025 | 01:36:54 | StreetID | 0 | 273319 | New Entry | Incident | D11 | SO5447 |
| 7/20/2025 | 01:36:54 | Location Name | | HANNAHS | New Entry | Incident | D11 | SO5447 |

# Plaintiff's Exhibit 27

[Plaintiff's Exhibit 27 is a Google Map image of the alley that runs between 5th and 6th Streets in downtown Boise for the year 2015 (August). Note this the alley that lies just to the east of the Alley where the Plaintiff was seized. The image clearly shows a garbage truck traveling eastbound down the alley.]



## DO NOT ENTER, WRONG WAY, ONE WAY, AND RELATED SIGNS AND PLAQUES

### Section 2B.46 DO NOT ENTER Sign (R5-1)

**Standard:**

01 **The DO NOT ENTER (R5-1) sign (see Figure 2B-13) shall be used at the following locations:**

**A. Where a two-way roadway becomes a one-way roadway (see Figure 2B-18);**
**B. The intersection of an interchange exit ramp with a crossroad as specified in Section 2B.48 (see Figure 2B-15);**
**C. The intersection of a channelized or turning roadway with a two-way undivided crossroad; and**
**D. Except as provided in Paragraph 4 of this Section, an intersection with a divided highway where the crossing functions as two separate intersections (see Figure 2B-14).**

*Guidance:*

02 *A DO NOT ENTER sign should be installed at other locations where additional emphasis is needed where wrong-way movements are prominent or where the intersecting angle of roadways is such that the visibility of ONE WAY signs alone does not sufficiently convey the restriction.*

Option:

03 A DO NOT ENTER sign may be installed at an intersection with a divided highway where the crossing functions as a single intersection as shown in Figure 2B-20.

04 A DO NOT ENTER sign may be omitted on a low-speed urban street that is a divided highway at a crossing that functions as two separate intersections.

05 An EXCEPT BICYCLES (R3-7bP) plaque (see Figure 2B-4) may be used with a DO NOT ENTER sign when counter-flow bicycle traffic is allowed.

*Guidance:*

06 *The DO NOT ENTER sign, if used, should be placed directly in view of a road user at the point where a road user could wrongly enter a divided highway, one-way roadway, or ramp. The sign should be mounted facing traffic that might enter the roadway or ramp in the wrong direction.*

07 *At a crossing with a divided highway that functions as a single intersection; the sign, if used, should be placed on the outside edge side of the roadway facing traffic that might enter the roadway in the wrong direction.*

08 *If the DO NOT ENTER sign would be visible to traffic to which it does not apply, the sign should be turned away from, or shielded from, the view of that traffic.*

Option:

09 A second DO NOT ENTER sign may be used, particularly where traffic approaches from an intersecting roadway (see Figure 2B-14).

---

**Figure 2B-13. DO NOT ENTER, WRONG WAY, ONE WAY, and Related Signs and Plaques**



**Figure 2B-14. Locations of DO NOT ENTER and WRONG WAY Signing for Divided Highway Crossings that Function as Two Separate Intersections**




Support:

10 Section 2B.48 contains information regarding an optional lower mounting height for DO NOT ENTER signs that are located along an exit ramp facing a road user who is traveling in the wrong direction.

11 Section 2A.12 contains the provisions for the use of continuously-operated or actuated LEDs to enhance the conspicuity of signs.

## Section 2B.47 WRONG WAY Sign (R5-1a)

Option:

01 The WRONG WAY (R5-1a) sign (see Figure 2B-13) may be used as a supplement to the DO NOT ENTER sign where a crossroad intersects a one-way roadway in a manner that does not physically discourage or prevent wrong-way entry (see Figures 2B-14 and 2B-20).

*Guidance:*

02 *If used, the WRONG WAY sign should be placed at a location along the one-way roadway farther from the crossroad than the DO NOT ENTER sign (see Section 2B.46).*

03 *The WRONG WAY sign should be placed on the same side of the road as the DO NOT ENTER sign.*

Support:

04 Section 2B.48 contains information regarding an optional lower mounting height for WRONG WAY signs that are located along an exit ramp facing a road user who is traveling in the wrong direction.

05 Section 2A.12 contains the provisions for the use of continuously-operated or actuated LEDs to enhance the conspicuity of signs.

## Section 2B.48 Wrong-Way Traffic Control at Interchange Ramps

**Standard:**

01 **At interchange exit ramp terminals where the ramp intersects a crossroad in such a manner that wrong-way entry could inadvertently be made, the following signs shall be used (see Figure 2B-15):**

**A. At least one ONE WAY sign for each direction of travel on the crossroad shall be placed where the exit ramp intersects the crossroad.**

**B. At least one DO NOT ENTER sign shall be conspicuously placed near the downstream end of the exit ramp in positions appropriate for full view of a road user starting to enter wrongly from the crossroad.**

**C. At least one WRONG WAY sign shall be placed on the exit ramp facing a road user traveling in the wrong direction.**

*Guidance:*

02 *In addition, the following pavement markings should be used (see Figure 2B-15):*

*A. On two-lane paved crossroads at interchanges, solid double yellow lines should be used as a center line for an adequate distance on both sides approaching the ramp intersections.*

*B. Where crossroad channelization or ramp geometrics do not make wrong-way movements difficult, a lane-use arrow should be placed in each lane of an exit ramp near the crossroad terminal where it will be clearly visible to a potential wrong-way road user.*

Option:

03 The following traffic control devices may be used to supplement the signs and pavement markings described in Paragraphs 1 and 2 of this Section:

A. Additional ONE WAY signs may be placed, especially on two-lane rural crossroads, appropriately in advance of the ramp intersection to supplement the required ONE WAY sign(s).

B. Additional WRONG WAY signs may be used.

C. Slender, elongated wrong-way arrow pavement markings (see Figure 3B-21) intended primarily to warn wrong-way road users that they are traveling in the wrong direction may be placed upstream from the ramp terminus (see Figure 2B-15) to indicate the correct direction of traffic flow. Wrong-way arrow pavement markings may also be placed on the exit ramp at appropriate locations near the crossroad junction to indicate wrong-way movement. The wrong-way arrow markings may consist of pavement markings or bidirectional red-and-white raised pavement markers or other units that show red to wrong-way road users and white to other road users.

D. Lane-use arrow pavement markings may be placed on the exit ramp and crossroad near their intersection to indicate the permissive direction of flow.

E. Freeway entrance signs (see Section 2D.50) may be used.

F. Lane control signs or movement prohibition signs may be used on the approaches to the exit ramp.

G. A Keep Right (R4-7 or R4-7c) may be used on a ramp median nose for wrong-way traffic control.

*Guidance:*

04 *On interchange entrance ramps where the ramp merges with the through roadway and the design of the interchange does not clearly make evident the direction of traffic on the separate roadways or ramps, a ONE WAY sign visible to traffic on the entrance ramp and through roadway should be placed on each side of the through roadway near the entrance ramp merging point as illustrated in Figure 2B-16.*

Option:

05 On interchange entrance ramps where the ramp merges with the through roadway and the design of the interchange does not clearly make evident the direction of traffic on the separate roadways or ramps a No Left Turn (R3-2) sign may be located on the left-hand side of the entrance ramp at the gore (see Figure 2B-16). If a No Left Turn (R3-2) sign is located on the left-hand side a supplemental R3-2 sign may be installed on the right-hand side of the entrance ramp.

06 On interchange entrance ramps where the ramp merges with the through roadway and the design clearly indicates the direction of flow, a ONE WAY sign may be placed visible to traffic on the entrance ramp and/or a NO TURNS (R3-3) sign may be placed visible to traffic on the entrance ramp and through roadway at the gore area as illustrated in Figure 2B-16.

**Figure 2B-15. Example of Application of Regulatory Signing and Pavement Markings at an Exit Ramp Termination to Deter Wrong-Way Entry**



Case 1:26-cv-00026-BLW Document 15-6 Filed 05/22/26 Page 13 of 30


## Figure 2B-16. Example of Application of Regulatory Signing and Pavement Markings at an Entrance Ramp Terminal

A – Design does not clearly indicate the direction of flow




B – Design clearly indicates the direction of flow



07 Where there are no parked cars, pedestrian activity, or other obstructions such as snow or vegetation, and if an engineering study indicates that a lower mounting height would address wrong-way movements on freeway or expressway exit ramps, a DO NOT ENTER sign(s) and/or a WRONG WAY sign(s) that is located along the exit ramp at a location downstream from the intersection with the crossroad facing a road user who is traveling in the wrong direction may be installed at a minimum mounting height of 3 feet, measured vertically from the bottom of the sign to the elevation of the near edge of the pavement. At the intersection with the crossroad, a WRONG WAY sign may be mounted at a minimum height of 3 feet on the same support on which a DO NOT ENTER sign is mounted at a height that complies with the provisions of Section 2A.15 (see Figure 2B-17).

Support:

08 Sections 2B.46, 2B.47, and 2B.49 contain further information on signing to avoid wrong-way movements at at-grade intersections on expressways.

## Section 2B.49 ONE WAY Signs (R6-1 and R6-2)

**Standard:**

01 **Except as provided in Paragraph 6 of this Section, the ONE WAY (R6-1 or R6-2) sign (see Figure 2B-13) shall be used to indicate streets or roadways upon which vehicular traffic is allowed to travel in one direction only.**

02 **ONE WAY signs shall be placed parallel to the one-way street at all alleys and roadways that intersect one-way roadways as shown in Figure 2B-18.**

03 **At the crossing of a roadway with a divided highway that functions as two separate intersections, ONE WAY signs shall be placed, visible to each crossroad approach, on the near right and far left corners of each intersection with the directional roadways (see Figure 2B-19).**

04 **At the crossing of a roadway with a divided highway that functions as a single intersection Keep Right (R4-7) signs (see Section 2B.39) and/or ONE WAY signs shall be installed (see Figure 2B-20). If Keep Right signs are installed, they shall be placed as close as practicable to the approach ends of the medians and shall be visible to traffic on the divided highway and angled (as needed) toward the applicable crossroad approach as shown in Figure 2B-20. If ONE WAY signs are installed, they shall be placed on the near right and far left corners of the intersection and shall be visible to each crossroad approach.**

Option:

05 At the crossing of a roadway with a divided highway, regardless of function as a single or separate intersections, ONE WAY signs may also be placed on the far right corner of the intersection as shown in Figures 2B-19 and 2B-20.

06 ONE WAY signs may be omitted on the one-way roadways of divided highways, where the design of interchanges indicates the direction of traffic on the separate roadways.

07 An EXCEPT BICYCLES (R3-7bP) plaque (see Figure 2B-4) may be used with a ONE WAY sign when counter-flow bicycle traffic is allowed.

Support:

08 Section 2B.48 contains information for the placement of ONE WAY signs at a crossroad with an interchange.

**Standard:**

09 **If used at unsignalized intersections with one-way streets, ONE WAY signs shall be placed on the near right and the far left corners of the intersection facing traffic entering or crossing the one-way street (see Figure 2B-18).**

10 **If used at signalized intersections with one-way streets, ONE WAY signs shall be placed near the appropriate signal faces, on the poles holding the traffic signals, on the mast arm or span wire holding the signals, or at the locations specified for unsignalized intersections.**

11 **At unsignalized T-intersections where the roadway at the top of the T-intersection is a one-way roadway, ONE WAY signs shall be placed on the near-right and the far side of the intersection facing traffic on the stem approach (see Figure 2B-18).**

Option:

12 Where the central island of a roundabout allows for the installation of signs, ONE WAY signs may be used to direct traffic counter-clockwise around the central island (see Figures 2B-22 and 2B-23).

*Guidance:*

13 *Where used on the central island of a roundabout, the mounting height of a ONE WAY sign should be at least 4 feet, measured vertically from the bottom of the sign to the elevation of the near edge of the traveled way.*

Option:

14 The BEGIN ONE WAY (R6-6) sign (see Figure 2B-13) may be used to notify road users of the beginning point of a one direction of travel restriction on the street or roadway. The END ONE WAY (R6-7) sign (see Figure 2B-13) may be used to notify road users of the ending point of a one direction of travel restriction on the street or roadway.

Case 1:26-cv-00026-BLW Document 15-6 Filed 05/22/26 Page 15 of 30


## Figure 2B-17. Examples of Low-Mounted WRONG WAY Signs with DO NOT ENTER Signs for Wrong-Way Traffic Control




For 7-ft mounting height of primary sign




For 5-ft mounting height of primary sign

* Sign is higher than the 5-ft mounting height as the size of the 42" x 30" WRONG WAY sign is controlling.

**Figure 2B-18. Locations of ONE WAY Signs**




## Section 2B.50 Divided Highway Crossing Signs (R6-3 and R6-3a)

**Standard:**

01 **On unsignalized minor-street approaches from which both left turns and right turns are permitted onto a divided highway at a crossing that functions as two separate intersections (see Section 2A.23), except as provided in Paragraph 2 of this Section, a Divided Highway Crossing (R6-3 or R6-3a) sign (see Figure 2B-13) shall be used to advise road users that they are approaching an intersection with a divided highway (see Figure 2B-19).**

Option:

02 If the divided highway has a traffic volume of less than 400 AADT and a speed limit of 25 mph or less, at a crossing that functions as two separate intersections, the Divided Highway Crossing signs facing the unsignalized minor-street approaches may be omitted.

03 A Divided Highway Crossing sign may be used on signalized minor-street approaches from which both left turns and right turns are permitted onto a divided highway to advise road users that they are approaching an intersection with a divided highway.

Plaintiff's Exhibit 29

# BOISE CITY

SCALE 300 FT. TO 1 INCH.

I, Hn. E. Prickett, Mayor of Boise City, in the County of Ada, Territory of Idaho, acting for and in behalf of the persons interested, do hereby certify and state on oath that said Boise City is founded and established on unsurveyed public lands, belonging to the United States, in the District of Lands subject to entry at said Boise City, in the Territory of Idaho, that the annexed accompanying Map or Plat is a true and correct plat of said City, and exhibits the name thereof, the Streets, Squares, Blocks, Lots and Alleys, and the size of the same as per actual measurements, that said City is not divided into municipal divisions, that the improvements located in the said Boise City consists of about four hundred buildings used and occupied as stores, warehouses, hotels, restaurants, saloons, public offices, dwelling houses, etc., together with the usual appurtenances thereto, that said buildings are principally good substantial brick and frame structures, and that the total value of all said improvements is not less than Seven Hundred and Fifty Thousand Dollars, that the following is a true copy of the field notes of the survey of said Boise City, to wit: commencing N.34°42'W. from the south east corner of the Boise City Military Reserve, 9.00 chains, thence S.34°42'W. 26.00 Chs., thence N.76°40'W. 28.00 Chs., thence along Front Street N.55°18'W. 58.78 Chs., thence N.34°42'E. 52.72 Chs, thence S.55°18'E. to Reserve line, 51.80 Chs., thence along Reserve line to place of beginning, 39.00 Chs., containing Four Hundred and Ten (410) Acres.

H. E. Prickett,
Mayor.

Subscribed and sworn to before me this 23rd day of November, A.D. 1867.

John Cummins,
U.S. District Judge.

Received and filed in my office at the request of H. E. Prickett this 25th day of November, A.D. 1867.

A. W. Flournoy,
Recorder.

STREETS 80. FT. WIDE,
ALLEYS 16. FT. WIDE,
LOTS 122. FT. LONG, 50. FT. WIDE.

* 2023010812
Easement vacation located on Block 19
** 2023025634
Utility easement on Lots 1-5 Block 19
*** 2023025635
Utility easement on Lots 7-12 Block 19

FOR Permit and Covenant ... to erect and maintain fence not over 4 feet high along and adjacent inside line of sidewalk and adjacent to said lots
See Instrument 442636 Filed Dec 8 1958
Recorded Book 37 page 245 of Misc Records

FOR Vacation Public Right-of-Way
See Instrument No. 750444 Filed 2-20 1975

FOR Amendment
See Instrument No. 7633864 6-21-76

Waiver Certificate 135566 2-19-70

FOR Vacation Alley Blk 94

Ordinance #2334, repealing Ordinance 2324 and vacating part of alley in Block 12, Being 581 Misc 418966 Nov 6 57 Book 35 41 Misc

FOR Ordinance No. 2549, amending Ordinance No 2334 recorded 35/41 Misc
See Instrument No. 530308 Filed 6-14 1962
Recorded Book 46 page 333 of Misc Records

FOR Vacation of alley by Boise City, Block 127 by ordinance No. 2400 approved 4-20-1959 from which would appear covers all of alley
See Deed
See Instrument No. 463806 Filed 9-25 1959
Recorded Book 460 page 502 of Deed Records as to area covered.

Restrictions in Block 4 ... 910431 ... 12-31 1974

FOR Ref. to party Wall Afdt
See Instrument No. 381757 Filed 8-24 1955
Recorded Book 29 page 323 of Misc Records
in re lots 1-2 Blk 8.




FOR Vacation Alley Blk 127
See Instrument No. 5-5-76 ... 750986

FOR Vacating alley Blk 50
See Instrument No. 788533 Filed 11-17 1971

FOR Vacation Alley Blk 94
See Instrument No. 951742 Filed 11-22 1974

FOR Mutual Release Building Restrictions
See Instrument No 641704 Filed 6-5-1962
Recorded Book 53 page 469

# Plaintiff's Exhibit 30

| Old Code Section | Subject[1] | New Code Section | Subject |
|---|---|---|---|
| 10-03-07 | Duty upon striking unattended vehicle | Repealed | |
| 10-03-08 | Duty upon striking fixtures upon a highway | Repealed | |
| 10-03-09 | Written report of accident | Repealed | |
| 10-03-10 | Public inspection of reports relating to accidents | Repealed | |
| 10-03-11 | Compliance with state law | 6-3-4 | Compliance with state law |
| 10-03-12 | Authorization to operate vehicle | Repealed | |
| 10-04 | Traffic control devices | | |
| 10-04-01 | Authority to install | Repealed | |
| 10-04-02 | Specifications for traffic-control devices | Repealed | |
| 10-04-03 | Traffic-control signal legend | Repealed | |
| 10-04-04 | Pedestrian control signals | 6-5-1 | Pedestrian control signals |
| 10-04-05 | Flashing signals | Repealed | |
| 10-04-06 | Display of unauthorized traffic-control devices | Repealed | |
| 10-04-07 | Play streets | Repealed | |
| 10-04-08 | Designation of crosswalks and establishment of safety zones | Repealed | |
| 10-04-09 | Traffic lanes | Repealed | |
| 10-05 | Speed regulations | | |
| 10-05-01 | State speed laws applicable | 6-6-1 | State speed laws applicable |
| 10-05-02 | Basic speed | Repealed | |
| 10-05-03 | Prima facie speed limits | 6-6-2 | Prima facie speed limits |
| 10-05-04 | Authority to alter maximum limits | Repealed | |
| 10-05-05 | Minimum speed | 6-6-3 | Minimum speed |
| 10-05-06 | Speeding within a school zone | 6-6-4 | Speeding within a school zone |
| 10-06 | Pedestrians | | |
| 10-06-01 | Pedestrians subject to traffic-control signs | 6-12-1 | Pedestrians subject to traffic control signs |
| 10-06-02 | Prohibited crossing | Repealed | |
| 10-06-03 | Pedestrians' right-of-way in crosswalks | 6-12-2 | Pedestrians' right-of-way in crosswalks |
| 10-06-04 | Pedestrians walking along roadways | Repealed | |
| 10-06-05 | Drivers to exercise due care | Repealed | |
| 10-06-06 | Pedestrian overpasses | 6-12-3 | Pedestrian overpasses |
| 10-07 | Does not exist | | |
| 10-08 | One-way streets and alleys | Repealed | |

Plaintiff's Exhbit 31

tyler technologies

# Enforcement Mobile

*powered by Brazos®*




public safety
a tyler portfolio

# Easy-to-Use Solution Used Most by Officers

Accurate data collection allows officers and court personnel to enforce the law safely, efficiently, and effectively.

To do this, law enforcement officers and court personnel need a robust data collection tool capable of capturing data for issuing and processing citations — and that's what Tyler Technologies' Enforcement Mobile, powered by Brazos®, does.

But that's just the tip of the iceberg. Enforcement Mobile offers powerful electronic citation, crash, parking, and stop data capabilities necessary for modern policing. Not only does Enforcement Mobile provide a device-independent electronic citation solution that can be used on handheld, laptop, tablet, and cellular devices, it is a complete solution that covers the full gamut — from data capture, to processing, to transmittal, straight into most courts and records systems.

With its configurability, integration, and virtually unlimited scalability, Enforcement Mobile empowers agencies to leverage their existing public safety and courts applications. This increases efficiency and ensures that data collected is always secure during the collection, storage, and transfer processes.

Officer safety during a traffic stop is of the utmost importance and Enforcement Mobile reduces the time officers spend on the roadside dramatically. Agencies report that officers went from spending up to 10 minutes on the scene to less than three minutes.

All these reasons and more are why hundreds of agencies and courts throughout the United States use Enforcement Mobile to complete more than 12 million citations annually.



# The Analytic, Mapping, and Reporting Capabilities Officers Need

Enforcement Mobile provides users with analytics, statistical reports, and mapping capabilities that help prevent and reduce traffic-related offenses.

Enforcement Mobile allows agencies to import street information from virtually any system. This data is then downloaded to the ticket writers where it is available in a drop-down list for the officer to use when creating an electronic citation. When the officer selects a street name from the list, the applicable cross streets are then provided. This helps both the officer and the agency — it takes the officer less time to enter the correct location information, and it allows the agency to work with geo-coded data on the back end for more accurate reporting.

Using our geolocation feature, officers can easily map an incident location. Tyler offers reverse geolocation capabilities which allows the officer to tap a location on a map and pin-point the location of an incident.

With mapping capabilities in Enforcement Mobile, agencies can view heat maps that identify problem areas on their mobile devices. Officers can filter the information provided in the heat maps to view the types of citations and traffic issues occurring in specific areas. This information can be generated into a report, which helps command staff increase patrol in hot spots to reduce and prevent incidents.

Officers can also filter by category to view what types of citations are being issued in specific areas. Command staff can use this information to manage or re-deploy patrol when necessary.




With powerful, built-in mapping capabilities, officers can use heat maps to identify problem areas to help prevent and reduce traffic-related offenses.

# Collect the Data Your Agency Needs

Enforcement Mobile is designed for high configurability. This ensures users are comfortable with the technology of the solution and can use it to its full advantage.

From initial configuration to deployment, agencies can change nearly every aspect of the solution without IT assistance.

Data fields in Enforcement Mobile are completely customizable, so agencies can add and subtract fields to meet their individual needs. Users can also configure printouts to translate into a different language, which increases communication efforts within communities.






# Leverage Your Existing RMS and Court Software Investment With Enforcement Mobile

A speeding violation citation is issued every second of the day in the U.S. That's around 31.5 million speeding tickets per year, most of which are processed electronically.

To keep up with this volume, officers need a system capable of handling the data before, during, and after the citation process. That's why it's important for agencies to use a system that integrates seamlessly with existing records and court applications.

While many agencies employ electronic ticketing processes to streamline workflow, it's important to select a mobile data collection tool that:

- Pulls relevant data from an agency's computer aided dispatch (CAD), mobile, and/or records applications
- Integrates with existing court applications
- Works with most mobile devices (iOS, Android, and Microsoft), tablets, or laptops used by an agency, city, county, or court
- Provides users with the ability to enter and capture citation data instantly, regardless of whether they have an internet connection

These features are all available with Enforcement Mobile.

# Experience Real-Time Information With Automatic Updates

Changes can be made easily and automatically flow to the field without a disruption in services. Every system and every device is updated as soon as they are synced, thereby eliminating outdated software and multiple variations of a form.

System administrators within the department define and control all users, user access, and device access allowed for each application. This provides detailed control over data access at both the user and device levels.

Internal changes aren't the only changes pushed out automatically. If court dates change, officers are notified immediately.

Enforcement Mobile also includes software and operating system upgrades as part of the solution, ensuring every agency that chooses its solutions remains at the forefront of technological evolution.

# Making the Most of Your Agency's Investment

In today's world, agencies are expected to do more with fewer resources. Implementing the Enforcement Mobile solution provides organizations with a direct return on investment through data accuracy and labor efficiencies.

While the overall cost of the project depends heavily on the hardware investment required, the typical payback period for implementing Enforcement Mobile products ranges from 3–12 months for most clients.

Most agencies realize these labor and cost savings by reallocating resources to other mission-critical projects.

### How Agencies Save Using Enforcement Mobile:

- Reducing the need for paper duplicates saves significant printing costs as well as the cost of historical storage of paper copies
- Capturing and validating data at the point of data entry reduces errors with both the original data capture as well as re-entry into the court and records management systems
- Decreasing dismissal rates through reduced errors
- Providing access to the NCIC database on the officer's mobile device speeds up overall traffic stops and frees dispatch and radio resources
- By allowing information to be captured electronically at the point of activity, fewer labor resources are needed for data entry into the court, police records management, and other back-end systems, thereby freeing up resources for other mission-critical projects

# Reduce Time on the Roadside With Enforcement Mobile

Efficiency is key to reducing time spent on the roadside. Enforcement Mobile's Electronic Citation module can complete a traffic stop in less than 90 seconds by utilizing the product's easy-to-use interface.

Gone are the days of using pen and paper to fill out a citation form. Enforcement Mobile allows for the entry of electronic citation data through one or more of the following methods defined and controlled by each agency:

- Swiping the magnetic strip on a driver's license
- Scanning VIN barcodes and vehicle registration with a mobile device
- Capturing data using a QWERTY keyboard, touch-screen, video, audio, photo, and fingerprints
- Beaming citation data between devices

This streamlined efficiency minimizes the time spent issuing the citation and reduces an officer's risk of death or injury while on the roadside.

Data from the citation then transfers electronically into the agency's records management system, court system, or any other system the agency wants.

The data remains secure throughout the collection, storage, and transfer processes.

This digital process eliminates indecipherable handwriting that can get citations thrown out of courts, and reduces errors by automatically requiring officers to fill in preconfigured boxes that ensure all information needed by the courts is collected at the scene.

To collect necessary demographic information, Enforcement Mobile offers built-in, drop down and customizable forms. If an officer were to forget to gather any portion of this information, Enforcement Mobile would alert the officer and take him or her back to the field in question.

When officers utilize tools that improve efficiency, they stay safer on the scene and collect all of the data necessary to meet operational requirements.

Spending less time on the roadside while still collecting vital data from drivers helps officers reduce risk of injury and improve operational efficiency.

# On-the-Scene Flexibility and Functionality With Electronic Crash

When law enforcement officers are on the scene of an accident, their first priority is to make sure those involved are safe. Before the scene is cleared, an accident report needs to be created.

Like the citation module, Electronic Crash is designed for handheld devices, tablets, and laptops, and allows officers to complete accident reports electronically in the field.

With Electronic Crash, officers experience improved accuracy, efficiency, and productivity.

In addition, each agency can define and control the fields, screens, layouts, security, and workflow.

Officers use Electronic Crash to store photos of the crash scene, print and share contact and insurance information, create a tow slip for damaged vehicles, and transfer data.

With drop-down boxes for required and pre-selected fields, Electronic Crash ensures essential data is gathered correctly and completely the first time. That essential data is stored electronically in the Enforcement Mobile system, the agency's records management system, and can be submitted easily to state reporting systems. Reports can also be printed on the scene.

Once reports are collected, Enforcement Mobile provides the complete workflow process for approvals, denials, submissions to the state, report modifications, superseding reports, and redaction.

Electronic Crash interfaces with most public safety software applications, so users can fully leverage their existing systems.

More than 250 agencies throughout the U.S. use Electronic Crash.




Agencies control the fields, screens, layouts, security and workflow in Electronic Crash. Officers use Electronic Crash to store photos of the scene, print and share contact and insurance information, and transfer data.

# Flexible, Fast, and Easy Electronic Parking Citations

Rather than writing parking citations by hand, which requires re-entry into court and law enforcement records management systems, Enforcement Mobile's Electronic Parking module auto-fills owners and vehicle information, ensuring accuracy and eliminating errors while reducing the duplication of efforts. Data collected is automatically uploaded into the public safety and court systems utilized by the ticketing agency.

Through Enforcement Mobile, the Electronic Parking module provides the back-end data collection and reporting capabilities in both hosted and locally installed models to accommodate the needs of agencies of all sizes. The solution is built for growth and flexibility. Users can change the look and feel of the screens, add new users and devices, customize ticket printouts, and much more.

Electronic Parking features include:

- Auto-filling of owner information from state DMV list, VIN, registration sticker, and/or query returns
- Identifies scofflaw violators for secondary procedures
- Electronic chalking capabilities



# Collect the Data You Need With Every Stop

Demographic information is required to some degree whenever law enforcement issues a citation. This allows agencies to assess any disparities and use findings to acknowledge and respond to what is and is not within their control.

With Enforcement Mobile's Stop Data capabilities, all demographic and related data required by the state is collected and safely stored. Agencies can then export this data to make it available for standard or Ad Hoc reports.

The Stop Data module shows all required data fields, ensuring officers collect the data they need no matter what. To expedite the process, officer information and ORI auto-populate as soon as the officer opens the Stop Data module.

**Data fields available within the Stop Data module are dependent on what each agency needs for reporting, but include:**

- Duration of stop
- Stop as result of a call for service
- Result of the stop
- Reason for the stop
- Type of traffic violation
- Narrative (type or enter using voice dictation capabilities)
- Location information
- Perceived questions regarding race, gender, sex, age, disabilities, and language
- Person information

All options are shown on a pick list allowing the officer to scroll to select the appropriate value, however, search capabilities are also available.

Once information is entered into the module, all data is saved on AWS GovCloud (US) for approval and submitted to the Department of Justice.

# A Partner You Can Trust

**As the proven, trusted choice among data collection tools, Enforcement Mobile is the go-to solution for an agency's electronic citation, crash, parking, and stop data needs. Enforcement Mobile users experience the following:**

- Eliminate re-entry of data
- Share data with other systems automatically
- Collect the right data on the scene
- Reduce time spent on the roadside
- Increase officer safety
- Improve prosecution rates

The modules work on virtually any mobile device and are compatible with most public safety and court applications. With the ability to digitize virtually any form, Enforcement Mobile helps agencies streamline operations.

**Enforcement Mobile also offers these additional capabilities:**

- Driver exchange
- Crash diagramming
- Tow reporting
- Electronic chalk warnings
- Cite & Release
- Field interviews
- K9
- Animal con
- Code enforcement
- Building code
- Fire code
- Fare enforcement
- Criminal trespass warnings
- Biometric software
- Vehicle inventory forms
- Equipment check-in/out
- Custom forms to capture data collected by paper



## About Tyler Technologies, Inc.

Tyler Technologies (NYSE: TYL) provides integrated software and technology services to the public sector. Tyler's end-to-end solutions empower local, state, and federal government entities to operate more efficiently and connect more transparently with their constituents and with each other. By connecting data and processes across disparate systems, Tyler's solutions are transforming how clients gain actionable insights that solve problems in their communities. Tyler has more than 37,000 successful installations across more than 12,000 locations, with clients in all 50 states, Canada, the Caribbean, Australia, and other international locations. Tyler has been recognized numerous times for growth and innovation, including Government Technology's GovTech 100 list and Forbes' "Most Innovative Growth Companies" list. More information about Tyler Technologies, an S&P 500 company headquartered in Plano, Texas, can be found at **tylertech.com**.

800.431.5776 | publicsafetyinfo@tylertech.com | www.tylertech.com

PS-EM-AB-8313-21881-BE-0222

tyler technologies

Empowering people who serve the public®

© 2022 Tyler Technologies, Inc. All rights reserved