UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRANDON FORLAND,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BOISE; OFFICER BRYCE BIENZ, Badge No. 1119; and OFFICER ALAN VIENS, Badge No. 759,<br><br>Defendants. | Case No. 1:26-CV-00026-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Defendants City of Boise, Officer Bryce Bienz, and Officer Alan Viens's Motion for Summary Judgment (Dkt. 13). The Court heard oral argument on September 17, 2026, and the matter is now ripe for review. For the reasons set forth below, the Court will deny the motion on Forland's Fourth Amendment claim, deny it on his First Amendment retaliation claim except to the extent that claim rests on the initial stop, and grant it on his claims against the City of Boise (Claims III and IV).

## BACKGROUND

In the early morning hours of July 20, 2025, Officer Bryce Bienz and Officer Alan Viens were walking a foot patrol in downtown Boise. *Bienz Decl.* ¶ 2, Dkt. 13-3; *Viens Decl.* ¶ 2, Dkt. 13-4. Both were assigned to what the Boise Police Department calls the "Bar Team," a detail that patrols the blocks in downtown Boise around Sixth and Main Streets, where there is a high concentration of bars and nightclubs. *Bienz Decl.* ¶ 2, Dkt.

13-3. Among their objectives on the patrol was to prevent and minimize vehicle-pedestrian accidents through education and enforcement of traffic laws, including laws prohibiting driving the wrong way on one-way roads. *Id.* Officer Bienz had been assigned to the detail for about a year. *Id.* Officer Viens had been assigned to it for roughly five and a half years. *Viens Decl.* ¶ 2, Dkt. 13-4.

At about 1:35 a.m., the officers were walking east through the alley that runs between Main Street and Grove Street and intersects Sixth Street on the east end and Capitol Boulevard on the west. *Bienz Decl.* ¶ 2, Dkt. 13-3; *Viens Decl.* ¶ 3, Dkt. 13-4. Brandon Forland, who was driving for a rideshare company, turned into the alley from Capitol Boulevard and drove east. *Forland Decl.* ¶ 4x. 4, Dkt. 15-2. He was headed to the passenger pickup pin located inside the alley. No "one-way" or "do not enter" signs were posted at either end of the alley to indicate it was open to westbound traffic only. *Id.*

As Forland drove into the alley, he immediately encountered the two officers. *Forland Decl.* ¶ 43, Dkt. 15-2. Officer Viens stepped in front of Forland's car at 1:35:38, and Forland stopped. Forland could not proceed forward because Officer Viens stood in his way. He could not turn left or right because a building stood on one side and a fence on the other. And he could not safely reverse out of the alley because the buildings lining the alley blocked his view of traffic on Capitol Boulevard. *Id.* ¶¶ 43–44.

Ten seconds later, Officer Viens approached the driver's window. Officer Viens says he understood that the alley was designated and posted for westbound vehicle traffic only, and that he approached Forland's car "to educate Mr. Forland that he was going the wrong direction down the Alley." *Viens Decl.* ¶¶ 4–5, Dkt. 13-4. He motioned for

Forland to back up and stated several times that he was going the wrong direction. *Id.* ¶ 5. Forland then tilted his head out the window and began yelling something that Officer Viens says he could not hear because he had earbuds connected to his radio in both ears. *Id.* Officer Viens motioned to his ears and repeated his command that Forland back up and go the other direction. *Id.* Forland did not comply and instead became, in Officer Bienz's words, "agitated and argumentative." *Bienz Decl.* ¶ 8, Dkt. 13-3.

Forland characterizes the encounter differently. He says Officer Viens was yelling and gesturing in an aggressive manner as he approached Forland's car, and that he initially could not hear what Officer Viens was saying. Forland "perceived Officer Viens' approach as disrespectful and confrontational. His posture appeared rigid, his facial expression appeared stern and condemning, and he spoke to [Forland] in a condescending tone." *Forland Decl.* ¶ 47, Dkt. 15-2. All agree that Forland leaned his head out of the window and yelled at Officer Viens. Forland says he asked Officer Viens why he was "being an asshole." *Id.* ¶¶ 46–47. Officer Viens denies hearing that remark. *Viens Decl.* ¶ 5, Dkt. 13-4. Both officers acknowledge that, after Officer Bienz approached the car, Forland told them Officer Viens had been disrespectful. *Bienz Decl.* ¶ 12, Dkt. 13-3; *Viens Decl.* ¶ 7, Dkt. 13-4.

At 1:35:59, about eleven seconds after Officer Viens first told him to back up, Officer Bienz turned on his body camera and walked to the car. At about 1:36:06, he asked for Forland's license, registration, and proof of insurance. *Bienz Decl.* ¶ 10 & Ex. G, Dkt. 13-3. Officer Viens asked dispatch to run the license plate, and the return came back at 1:37:08. Officer Bienz then stood near the rear of the car for several minutes

working on a handheld electronic citation device. During that time Forland told the officers twice that he had not seen a sign. Neither officer told him that a sign existed. Forland also told the officers that officers who are public-facing should be nice to people.

Forland's rideshare passengers arrived at about 1:40:50. Officer Bienz stepped back so they could get into the car, finished the citation, and handed it to Forland. The citation charged a violation of Idaho Code section 49-636, which requires that a vehicle on a one-way highway be driven only in the direction indicated by traffic-control devices. In the narrative, Officer Bienz wrote that Forland did not realize that alleys are one way, that he had been driving eastbound in a westbound-only alley, and that he began lecturing Officer Viens and Officer Bienz about being public-facing figures. The encounter ended at 1:42:08, about six and a half minutes after it began. Forland was never touched, never asked to step out of the car, and never arrested.

In September 2025, a deputy city prosecutor learned that no sign was posted at the Capitol Boulevard entrance and dismissed the citation. *Bienz Decl.* ¶ 11, Dkt. 13-3. The Ada County Highway District, which installs traffic-control signs on public roadways in Boise, later posted a "do not enter" sign at that entrance. The City says the Highway District alone installs signs on Boise roadways, while Forland contends the City decides which alleys are one-way and in which direction. *Wilson Decl.* ¶ 2, Dkt. 13-6.

Forland complained to the Boise Police Department. Sergeant Matt Jacobs reviewed the encounter and told Forland that the officers had acted professionally and that downtown alleys had been westbound one-ways for as long as he could remember. Chief of Police Christopher Dennison wrote to Forland on September 3, 2025, that the

Department had reviewed the reports and recordings and found insufficient evidence to conclude that an officer had violated law or policy. The Office of Police Accountability wrote on October 9, 2025, that the recordings did not support the allegation that the officers had been rude, unprofessional, or aggressive, and that the citation was appropriate and within policy regardless of signage.

Forland then filed this action under 42 U.S.C. § 1983. He brings claims for unreasonable seizure under the Fourth Amendment (Claim I), retaliation under the First Amendment (Claim II), a denial of due process based on an unwritten City policy (Claim III), and municipal liability by ratification (Claim IV). Defendants move for summary judgment on all four.

## LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Id.* at 255. The Court does not weigh the evidence or make credibility findings. *Id.* Where the record contains video of the events, the Court views the facts in the light the video depicts. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). Once the moving party shows an absence of evidence on an element the nonmoving party must prove at trial, the nonmoving party must come forward with

specific facts showing a genuine dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Defendants also ask the Court to strike portions of Forland's declaration as speculative and to strike a recording of his telephone conversation with two Ada County Highway District employees as unauthenticated hearsay. *Defs.' Reply* at 7 nn.2–3, Dkt. 18. The Court does not rely on the challenged opinions about the electronic citation device or on the recording in resolving this motion, and it therefore need not decide those objections.

## ANALYSIS

### A. Unreasonable Seizure in Violation of the Fourth Amendment (Claim I)

The Fourth Amendment protects citizens from unreasonable searches and seizures by the government. U.S. Const. amend. IV. A traffic stop is a seizure for purposes of the Fourth Amendment, and it must be supported by reasonable suspicion that the driver has broken the law. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Defendants do not dispute that Forland was seized when Officer Viens stepped in front of his vehicle and blocked him from continuing through the alley. They argue instead that the officers had reasonable suspicion to stop Forland and, in any event, are entitled to qualified immunity because the law was not clearly established.

Qualified immunity protects an officer from damages unless the officer violated "a clearly established statutory or constitutional right of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It gives officers "breathing room to make

reasonable but mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (cleaned up) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). It shields officers even when their actions rest on "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (citation omitted).

Whether an officer is entitled to qualified immunity depends on (1) whether the officer violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Liberal v. Estrada*, 632 F.3d 1064, 1076 (9th Cir. 2011), *abrogated on other grounds by Hampton v. California*, 83 F.4th 754 (9th Cir. 2023). "While the constitutional violation prong concerns the reasonableness of the officer's *mistake of fact*, the clearly established prong concerns the reasonableness of the officer's *mistake of law*[.]" *Torres v. City of Madera*, 648 F.3d 1119, 1127 (9th Cir. 2011) (emphasis in original). "Either question may be addressed first, and if the answer to either is 'no,' then the state actor cannot be held liable for damages." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) (citing *Pearson*, 555 U.S. at 236).

The Court begins with the constitutional prong, which turns on whether the officers had reasonable suspicion to stop Forland.

**1. Constitutional Violation**

Reasonable suspicion must be supported by specific and articulable facts giving rise to a particularized and objective basis for suspecting the person of criminal activity. *Liberal*, 632 F.3d at 1077. An officer may rely on his training and experience to draw

reasonable inferences from the facts he observes. *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000). But "those inferences must also be grounded in objective facts and be capable of rational explanation." *Id.* (citation and quotation marks omitted); *see also United States v. Sokolow*, 490 U.S. 1, 7 (1989) ("The Fourth Amendment requires some minimal level of objective justification for making the stop." (internal quotation marks omitted)). The officer's subjective intentions are irrelevant to the Fourth Amendment analysis. *See Whren v. United States*, 517 U.S. 806, 813 (1996).

Officer Viens stopped Forland because he believed Forland had violated Idaho Code section 49-636 by driving east into the alley from Capitol Boulevard. That statute provides that "[u]pon a highway designated for one-way traffic, a vehicle shall be driven only in the direction designated at all or such times as shall be indicated by traffic-control devices." I.C. § 49-636. A violation therefore requires both that (1) the highway be designated for one-way traffic, and (2) signs be posted indicating the proper direction of travel. *Id.*

Both officers say they understood these requirements but believed the alley was posted for westbound traffic only. *Bienz Decl.* ¶ 8, Dkt. 13-3; *Viens Decl.* ¶ 8, Dkt. 13-4. But no one-way sign was posted at the entrance Forland used, and the deputy city prosecutor dismissed the citation for precisely that reason. *Bienz Decl.* ¶ 11, Dkt. 13-3. Had the officers known that no sign was posted, they could not have harbored reasonable suspicion that Forland had committed a traffic violation. *See, e.g., United States v. Camaddu*, 69 F. App'x 835, 836 (9th Cir. 2003) (mem.) (where no stop sign was erected indicating stopping was required, "the officers could not have harbored reasonable

suspicion that Camaddu had committed a traffic violation"); *see also United States v. Raney*, 633 F.3d 385, 390 (5th Cir. 2011) ("If the alleged traffic violation forming the basis of the stop was not a violation of state law, there is no objective basis for justifying the stop.").

This does not necessarily end the inquiry, however. An officer's mistake of fact does not render a stop unlawful if the mistake was objectively reasonable and made in good faith. *United States v. Miguel*, 368 F.3d 1150, 1153–54 (9th Cir. 2004). Because the officers justify the stop based on their mistaken belief that the alley was signed as one-way, the question is whether that mistake was objectively reasonable under the totality of the circumstances. *See Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014). An unreasonable mistake will not support the stop. *Demuth v. Cnty. of Los Angeles*, 798 F.3d 837, 839 (9th Cir. 2015).

Many reasonable mistakes of fact involve officers appropriately relying on inaccurate reports by third parties. In *Miguel*, two sheriff's deputies pulled over the defendant's car based on the mistaken belief that the car's registration had expired. *Miguel*, 368 F.3d at 1153. The Ninth Circuit held that the mistake was reasonable because the Arizona Motor Vehicle Department's database showed the registration as expired, and the officers had no reason to question the integrity of the database. *Id.* at 1154. The Ninth Circuit reached a similar conclusion in *United States v. Dorais*, 241 F.3d 1124 (9th Cir. 2001), in which an officer pulled over a rental car that the rental car company had erroneously reported as stolen. Because the officer relied on the report from

the rental car company, "whose honesty had not been questioned," the court held that his reasonable mistake of fact did not defeat reasonable suspicion. *Id.* at 1131.

This case is different. The officers did not rely on a third party's incorrect report; they "made the mistake" themselves. *United States v. Odom*, 588 F. Supp. 3d 1032, 1046 (N.D. Cal. 2022) (holding an officer's own mistaken interpretation of a defendant's explanation was unreasonable). No one told the officers that a one-way sign was posted at either end of the alley between Sixth Street and Capitol Boulevard. Instead, the officers say they "understood" that the downtown alleys were designated for westbound traffic only. They also say they have seen one-way signs at the entrances and exits of downtown alleys between Third Street and Twelfth Street, including other sections of the alley running between Main Street and Grove Street. *Bienz Decl.* ¶ 4, Dkt. 13-3; *Viens Decl.* ¶ 4, Dkt. 13-4. Neither officer claims to have seen a one-way sign at the alley's Capitol Boulevard entrance at any point since joining the "Bar Team" patrol. Nor could they. Forland has offered undisputed evidence that no sign had been posted at that entrance since at least 2007, and that the only one-way sign near the Sixth Street end of the alley stood on the east side of Sixth Street, at the exit of the neighboring alley segment, and had been gone since 2022.[1] *Forland Decl.* ¶¶ 38–39, Dkt. 15-2; Exs. 11-15, Dkt. 15-4.

---

[1] Forland submitted Google Maps images of the Sixth Street end of the alley from 2011 and from 2021 through 2024. *Forland Decl.*, Exs. 11, 12, 13, 14, 15 (Dkt. 15-4). The images from 2022, 2023, and 2024 show no one-way sign there. *Id.*, Ex. 11, 12, 13. The 2011 and 2021 images show a one-way sign at the exit on the east side of Sixth Street, where the alley segment between Fifth Street and Sixth Street ends, but no sign at the entrance on the west side of Sixth Street leading toward Capitol Boulevard. *Id.*, Exs. 14, 15. Based on his review of the available Google Maps images, Forland attests that the sign on the east side of Sixth Street was posted from 2011 through 2021 but was not posted from 2022 until at least July 20, 2025.

Defendants offer nothing to contradict this evidence. At most, they offer a Google Street View screenshot from June 2021 showing a one-way sign at the exit where the alley segment between Fifth Street and Sixth Street meets Sixth Street. *Bienz Decl.*, Ex. B, Dkt. 13-9. Forland submitted this same image. *Forland Decl.*, Ex. 14, Dkt. 15-4. Defendants' remaining Google Maps images show one-way signs at the entrances and exits of other downtown alleys, not the alley at issue here.

On this record, a reasonable jury could find that the officers' mistake was unreasonable and that they therefore lacked reasonable suspicion to stop Forland. Both officers patrolled a small number of downtown blocks on foot, and one stated purpose of that patrol was to watch for drivers traveling the wrong way on one-way roads. Officer Viens had walked that beat for more than five years. The officers were walking east through the alley when Forland turned in, which supports an inference that they had entered from the same unposted entrance moments earlier. The citation Officer Bienz issued says nothing about signage. A jury could weigh all of that and conclude that officers who worked these blocks night after night either knew the entrance was unposted or were unreasonable in assuming otherwise.

Defendants insist there is no evidence the officers knew no sign was posted "to support an inference that [they] stopped Mr. Forland in bad faith." *Defs.' Br.* at 6, Dkt. 13-1. Even if true, this argument misses the point. A mistake of fact must be made in good faith, but it must also be objectively reasonable. The question is "whether a reasonable officer would have or should have accurately perceived [the mistaken] fact." *Torres*, 648 F.3d at 1127; *see also Maryland v. Garrison*, 480 U.S. 79, 86 (1987)

(validity of search that resulted from a mistake of premises turned on whether the officers "had known, or should have known" about the condition precipitating the error). "The qualified immunity standard is not so deferential to officers that it will allow a chimera created by an officer's imaginings to be used against the driver." *Liberal*, 632 F.3d at 1078 (quoting *United States v. Mariscal*, 285 F.3d 1127, 1130 (9th Cir. 2002)). Construing the facts in Forland's favor, the Court must assume that a reasonable officer would have noticed that no one-way sign was posted where Forland entered the alley, and so could not reasonably have believed that Forland had violated section 49-636. *See id.* ("Construing the facts in the light most favorable to Plaintiff, we must assume that Officer Estrada could not have seen Plaintiff's front car windows at all. . . . That being so, it would not be reasonable for Officer Estrada to believe that he had seen illegally tinted front windows.").

Even if a jury were to find the officers reasonably assumed a sign was posted when the stop began, it could find the officers unreasonably held onto that belief for the duration of the stop. Forland says he twice told the officers that he had not seen a sign, and neither officer told him that one was posted. The entrance Forland used was only fifty to seventy-five feet away. *Forland Decl.* ¶ 51, Dkt. 15-2. An officer may not close his eyes to readily available facts that would resolve his suspicion. *See Theney v. City of Los Angeles*, No. CV 15-9602-AB (AFMX), 2017 WL 10743001, at *4 (C.D. Cal. June 19, 2017) (citing *United States v. Lopez*, 482 F.3d 1067, 1073 (9th Cir. 2007)) ("[I]t is well-settled that an officer may not close their eyes to available facts tending to dissipate suspicion.").

The officers respond that they could not have checked for a sign without separating, which would have left one officer alone with an agitated driver. A jury need not accept that explanation. Forland stayed in his car the whole time. He was never frisked, never asked to step out, and never handled as a threat. The officers did not call for backup, and the computer-aided dispatch record shows no change in alarm level. Officer Bienz was comfortable enough to step away from the car so that Forland's passengers could climb in. Whether it was reasonable to spend six and a half minutes on the stop without walking fifty to seventy-five feet to confirm the basis for it is a question for the jury.

The officers also contend that they had reasonable suspicion to believe Forland violated Idaho Code section 49-1419 by willfully failing to comply with Officer Viens's order to reverse out of the alley. To violate that section, a person must willfully fail or refuse to comply with a lawful order. I.C. § 49-1419. This alleged violation cannot justify the initial stop. Forland was seized at 1:35:38, and Officer Viens gave no order until 1:35:48. A driver cannot disobey an order he has not yet received.

Forland's alleged violation of section 49-1419 does not justify his continued detention either, at least on summary judgment. Officer Viens gave his first command at 1:35:48, and Officer Bienz began the formal stop about eighteen seconds later. During those seconds Officer Viens was gesturing that he could not hear Forland, and Forland says he could not hear Officer Viens. Whether a driver who has not reversed within eighteen seconds under those conditions has willfully refused a lawful order is not a question this Court can answer on this record. Forland has also offered evidence that

backing out of the alley onto Capitol Boulevard would have been dangerous because the buildings on either side blocked his view of oncoming traffic. Neither officer mentioned section 49-1419 during the encounter, and the citation says nothing about it.

Viewing the facts in the light most favorable to Forland, a reasonable jury could find that the officers' belief that a one-way sign was posted where Forland entered the alley was objectively unreasonable, and that their seizure of Forland violated the Fourth Amendment. The reasonableness of the officers' mistake is a matter for the jury to decide. *See D'Braunstein v. Cal. Highway Patrol*, 131 F.4th 764, 772 (9th Cir. 2025) (quoting *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1168 (9th Cir. 2013)) (explaining "it sometimes proves necessary for a jury to determine first whether the mistake was, in fact, reasonable").

**2. Clearly Established Right**

Because a reasonable jury could find a Fourth Amendment violation, the Court turns to the second prong, which asks whether the right was clearly established. "A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (internal quotation marks omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). In evaluating this prong, courts assume the officer "correctly perceived all of the relevant facts" and ask whether the officer could have reasonably believed that his conduct "was lawful under the circumstances." *Torres*, 648 F.3d at 1127.

The question, then, is whether officers who knew that no traffic-control device was posted at the entrance Forland used would have understood that they could not stop him for violating the one-way statute. *See id.* at 1129 (assuming the officer knew she fired a firearm rather than a taser). The answer is yes, and Officers Viens and Bienz do not contend otherwise.

Despite that concession, the officers argue that they are entitled to qualified immunity because Forland has not identified a factually similar case where an officer mistakenly believed a traffic sign was posted when it was not. But this is the sort of "obvious case" that does not require a body of case law to establish the unlawfulness of the officers' conduct. *Rivas-Villegas*, 595 U.S. at 6; *see also Est. of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022). "[I]t has long been clearly established that it is unlawful to conduct an investigatory stop and search unsupported by reasonable suspicion." *Sialoi v. City of San Diego*, 823 F.3d 1223, 1237 (9th Cir. 2016). Assuming the officers knew that no one-way or do-not-enter sign was posted where Forland entered, this "general constitutional rule" applies "with obvious clarity" here and renders the officers' decision to stop Forland objectively unreasonable. *Aguirre*, 29 F.4th at 629 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), and *United States v. Lanier*, 520 U.S. 259, 270–71 (1997)).

The officers' argument also blurs the line between the two prongs. They contend that qualified immunity protects reasonable mistakes of fact, and that no case holds that officers in their position acted unconstitutionally. *Defs.' Reply* at 5–6, Dkt. 18. But the reasonableness of the officers' factual mistake is decided under the first prong, not the

second. *Torres*, 648 F.3d at 1127. No case law could tell an officer whether a sign is posted at the end of a particular alley. That is a matter of factual perception, not decisional law. *See D'Braunstein*, 131 F.4th at 772. If the jury finds the officers' mistake was reasonable, they will prevail on the first prong. If the jury finds it was not, the officers cannot recast that mistake as a reasonable misunderstanding of the law. Requiring a prior case with matching facts would foreclose a trial in every case where the reasonableness of an officer's conduct turns on disputed facts. *Torres*, 648 F.3d at 1129.

The officers' only remaining response is to repeat their mantra that they reasonably believed the alley was posted for westbound travel only. But the officers can neither rewrite the facts to their liking nor ignore contrary evidence that their mistake was objectively unreasonable. *Aguirre*, 29 F.4th at 630. These critical factual disputes render summary judgment premature on Forland's Fourth Amendment claim. *See Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003) (affirming denial of summary judgment where officers' entitlement to qualified immunity turned solely on whether the officers' mistake of fact was objectively reasonable).

**B. First Amendment Retaliation (Claim II)**

Forland also claims that the officers violated his First Amendment rights by prolonging the stop and citing him because he criticized Officer Viens. "The First Amendment forbids government officials from retaliating against individuals for speaking out." *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (quoting *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010)). To recover for this alleged retaliation, Forland must show that he engaged in constitutionally protected activity, that

the officers subjected him to an adverse action that would chill a person of ordinary firmness from continuing to engage in that activity, and that a substantial causal relationship connects the two. *Id.*

The first element is satisfied. Criticism directed at a police officer is protected speech, and the protection is not lost because the criticism is rude or profane. *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). The second element is satisfied as well. A six-and-a-half-minute roadside detention and a citation could deter an ordinary person from criticizing an officer again. *See Duran v. City of Douglas*, 904 F.2d 1372, 1377–78 (9th Cir. 1990).

The third element is causation, and it requires the plaintiff to show that the protected speech was a but-for cause of the adverse action. *Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019). Part of the claim fails on causation at the outset. Forland agrees that Officer Viens stepped in front of his car before he said anything to either officer. The initial seizure cannot have been caused by speech that had not yet occurred. Defendants are entitled to summary judgment to the extent Forland's First Amendment retaliation claim rests on the initial stop.

On the other hand, the claim survives to the extent it rests on Forland's theory that the officers prolonged the stop and issued the citation because he called Officer Viens an asshole and then lectured both officers about their conduct. Forland has submitted sufficient evidence to reach a jury on this claim.

By Officer Viens's own account, he initially approached Forland's car simply "to educate Mr. Forland that he was going the wrong direction down the Alley." *Viens Decl.*

¶ 5, Dkt. 13-4. He then did no more than motion for Forland to back up and tell him "several times that he was going in the wrong direction." *Id.* Only after Forland leaned out of his window and began yelling did Officer Bienz walk over to the car and demand documents. Officer Bienz wrote in the citation narrative that Forland had begun lecturing him and Officer Viens about being public-facing figures, from which a jury could infer that the speech was on his mind as he wrote the ticket. And neither officer had ever cited a driver for wrong-way travel in a downtown alley before, nor had any other Boise officer done so in the six years the City searched. *Berriochoa Decl.* ¶¶ 3–4, Dkt. 13-7. From these facts, a reasonable juror could infer that the officers would not have cited Forland for driving the wrong way down the alley but for his "lecturing" them about their duties as public-facing figures. *See Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300–01 (9th Cir. 1999) (explaining retaliatory intent may be proved by circumstantial evidence).

The officers also argue that reasonable suspicion supported the stop and that the existence of reasonable suspicion disproves causation under *Nieves*. That argument fails for two reasons. First, it depends on the existence of reasonable suspicion, which is disputed for the reasons given above. Second, even assuming the *Nieves* rule extends to an investigatory stop and citation of this kind, *Nieves* recognizes an exception when a plaintiff presents objective evidence that he was treated differently from otherwise similar individuals who did not engage in the protected speech. 587 U.S. at 406. The Supreme Court has since confirmed that this evidence need not consist of examples of identically situated individuals who went uncited. *Gonzalez v. Trevino*, 602 U.S. 653,

658–59 (2024). Evidence that no Boise officer cited anyone for wrong-way alley travel over a six-year period is the sort of objective evidence the exception contemplates. Summary judgment on Forland's First Amendment retaliation claim is therefore denied, except to the extent the claim rests on the initial stop.

### C. Municipal Liability (Claims III and IV)

Forland's claims against the City of Boise do not survive summary judgment, however. A municipality may not be held liable under § 1983 for actions of its employees based on a theory of respondeat superior. *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Rather, under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), "plaintiffs suing a municipal entity for damages under 42 U.S.C. § 1983 must show their injury was caused by municipal policy or custom." *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 30–31 (2010).

A governmental policy is "a deliberate choice to follow a course of action . . . by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). A plaintiff can satisfy *Monell*'s policy requirement in one of three ways. *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 883 (9th Cir. 2022). First, a municipality may be liable if it acted "pursuant to an expressly adopted official policy." *Id.* (quoting *Gordon*, 6 F.4th at 973). Second, a municipality may be liable based on a "longstanding practice or custom," or, third, if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.*

Forland advances two theories of municipal liability. In Claim III he contends that the City maintained unwritten policies or customs that caused the officers to stop and cite him. In Claim IV he contends that the City's final policymakers ratified what the officers did. Defendants read Claim III differently, as a Fourteenth Amendment claim against the two officers for enforcing either an unwritten one-way rule or a statute that Forland believes is unconstitutionally vague. *Defs.' Br.* at 13–14, Dkt. 13-1. Forland disclaims that reading. *Pl.'s Resp.* at 14, Dkt. 15. The Court will accept Forland's description of his own claim and analyze Claim III as a policy-or-custom claim against the City.[2]

**1. Policy or Custom (Claim III)**

Forland identifies three unwritten policies or customs. He contends the City had an unwritten policy that "downtown alleys are westbound one-ways"; an unwritten policy "of failing to cause its downtown alleys to be properly designated and signed"; or, in the alternative, an unwritten policy "that signage was not required for a driver to violate the law." *Pl.'s Resp.* at 17, Dkt. 15. He says these interrelated policies were the moving force behind the officers' decision to stop and cite him. *Id.* at 17–18.

A plaintiff proceeding on a custom theory must show a practice "of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Liability may not rest on isolated or sporadic incidents. *Id.* The plaintiff must also show that the policy

[2] To the extent Claim III could be read, as Defendants read it, as a claim against the officers for enforcing a vague statute, the officers would be entitled to qualified immunity. *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994).

or custom was the moving force behind the constitutional injury, not merely a but-for condition of it. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Forland's three asserted customs fail at least one of these elements.

The record contains evidence that City employees believed that downtown alleys are westbound one-ways. Both officers say they understood that downtown alleys were designated and posted for westbound travel. *Bienz Decl.* ¶ 4, Dkt. 13-3; *Viens Decl.* ¶ 4, Dkt. 13-4. In a recorded call, Sergeant Jacobs told Forland the alleys had been westbound one-ways for as long as he could remember. *Jacobs Decl.*, Ex. J, Dkt. 13-17. An employee in the City's planning department said he understood that most downtown alleys had been designated for westbound travel. *Wilson Decl.* ¶ 3, Dkt. 13-6. And the citation narrative says Forland did not realize that alleys are one way. *Bienz Decl.*, Ex. H, Dkt. 13-15.

Taken in Forland's favor, that evidence would allow a jury to find the belief was widely shared inside the City. But a widely shared belief that the alleys were designated and posted for westbound travel is not a custom of stopping drivers in alleys that lack signs. The injury Forland alleges is a stop and citation unsupported by reasonable suspicion. To tie that injury to a municipal custom, Forland must show a practice of enforcing section 49-636 in alleys that were not posted. The record shows no such practice. Between January 1, 2020, and December 31, 2025, one driver was cited for wrong-way travel in a downtown alley, and that driver was Forland. *Berriochoa Decl.* ¶¶ 3–4, Dkt. 13-7. Forland responds that officers may have stopped other drivers without citing them, and that such stops would not appear in citation records. He offers no

evidence that any such stop occurred, and speculation does not create a genuine dispute of material fact. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). A single citation in six years is the kind of isolated incident on which custom liability cannot rest. *Trevino*, 99 F.3d at 918.

The second custom, a failure to designate and sign the alleys properly, founders on causation. The parties dispute whether the City or the Ada County Highway District is responsible for posting signs, but the Court need not resolve that dispute. Even if the City bears that responsibility, the missing sign at most made the officers' suspicion mistaken. It did not lead them to stop a driver without confirming the basis for the stop, or to hold him for six and a half minutes without walking back to look. Nothing in the record suggests that the City directed either decision or trained its officers to make it. A but-for condition of that kind is not the moving force *Monell* requires. *Brown*, 520 U.S. at 404.

The third and alternative custom, that signage is not required for a driver to violate the law, finds no support in the record. Forland's evidence for this custom consists of the citation narrative, which says nothing about signage, and statements made after the stop, namely Sergeant Jacobs's remarks, Chief Dennison's letter, the email from the Office of Police Accountability, and a sentence in Defendants' brief. *Pl.'s Resp.* at 17, Dkt. 15. Both officers testified that they understood a violation of section 49-636 requires posted signs, and that they received no instruction to enforce the statute otherwise. *Bienz Decl.* ¶¶ 8, 13, Dkt. 13-3; *Viens Decl.* ¶ 8, Dkt. 13-4. Nothing in the record shows that any City official told officers, before July 20, 2025, that they could enforce the statute without

regard to signage. Statements made after the stop cannot have been the moving force behind it.

Finally, to the extent that Forland alleges that the City's unwritten policies were unconstitutionally vague because they gave him no notice that eastbound travel in the alley was prohibited and left the officers free to decide for themselves whether he had broken the law, *see Pl.'s Resp.* at 14, 17–18, Dkt. 15, this claim also fails. Due process demands that our criminal laws clearly define what they prohibit to ensure that the public has fair notice of what conduct is illegal and to prevent arbitrary or discriminatory enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A law or policy is void for vagueness if its prohibitions are not clearly defined. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). But a vagueness challenge is not a theory of municipal liability. It is a challenge to the constitutionality of the rule enforced against the plaintiff.

As already discussed, Forland offers no evidence suggesting the officers cited him for violating the City's unwritten policy that all downtown alleys run westbound regardless of whether signs are posted. Instead, Forland was cited for violating Idaho Code section 49-636, a state statute that the City did not write and that Forland does not contend is vague. To the contrary, his case depends on the statute's clarity. He argues, correctly, that the statute required a posted sign and that no sign was posted where he entered the alley. Whatever City employees understood about the direction of travel in downtown alleys, that understanding was not a rule that defined Forland's obligations. The only law that forbade eastbound travel in the alley was section 49-636, and by its

own terms that statute did not apply until a sign was posted. Nor did the officers exercise discretion the statute left open to them. They made a mistake about whether a sign was posted, and the reasonableness of that mistake is a Fourth Amendment question, not a due process question. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion); *Graham v. Connor*, 490 U.S. 386, 395 (1989). Summary judgment is granted on Claim III.

**2. Ratification (Claim IV)**

A municipality may be liable for a single decision by a subordinate when an official with final policymaking authority ratifies that decision and the basis for it. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion); *Christie v. Iopa*, 176 F.3d 1231, 1238–39 (9th Cir. 1999). Ratification requires that the policymaker know of the alleged constitutional violation and approve both the subordinate's act and the reasons for it. *Christie*, 176 F.3d at 1239–40. A policymaker's failure to overrule a subordinate's completed act, or to discipline the subordinate afterward, is not enough. *Id.* at 1239; *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other grounds*, 575 U.S. 600 (2015). Whether an official has final policymaking authority is a question of state law. *Praprotnik*, 485 U.S. at 123.

Forland first asks the Court to treat Claim IV as conceded because Defendants' opening brief did not address ratification by name. The Court declines to do so. Defendants moved for summary judgment on all four claims and argued that the City maintained no policy or custom that caused Forland's injury. Their reply addressed

ratification directly, and Forland had a full opportunity to present his evidence on the point in his response, which he did.

Forland relies on three responses to his complaint. Sergeant Jacobs told him the officers had acted professionally. Chief Dennison wrote that the Department had reviewed the reports, recordings, and other materials and found insufficient evidence that an officer violated law or policy. *Forland Decl.*, Ex. 24, Dkt. 15-6 at 2. And a case administrator in the Office of Police Accountability wrote that the recordings did not support the allegation that the officers were rude or aggressive, and that "regardless of signage, traveling the wrong way down a one-way alley posed a safety risk, and the issuance of a citation was appropriate and within policy." *Id.*, Ex. 25, Dkt. 15-6 at 3.

Only one of these responses could be attributed to the City. Sergeant Jacobs is not a final policymaker, and Forland does not contend otherwise. Nor does Forland contend that the Office of Police Accountability or its case administrator sets policy for the City. He identifies Chief Dennison as the City's final policymaker on police matters, citing the Boise City Code, and the Court will assume for purposes of this motion that he is right. *Pl.'s Resp.* at 18 n.10, Dkt. 15.

The Chief's letter does not show ratification. It is a brief form letter. It does not describe the conduct Forland complained of, does not mention the stop, the citation, or the missing sign, and does not endorse any reason the officers gave for what they did. It reports that an internal review found insufficient evidence of a violation of law or policy. The record does not show what Forland's complaint to the Department said, and nothing shows that the Chief knew the entrance was unposted or that the citation had been

dismissed. Ratification requires knowledge of the alleged violation and approval of the basis for the subordinate's decision. *Christie*, 176 F.3d at 1239–40. A general statement that a review turned up no violation establishes neither. If it did, every unsuccessful citizen complaint would convert an officer's conduct into municipal policy, and the rule against respondeat superior liability would mean very little. *See Sheehan*, 743 F.3d at 1231.

The email from the Office of Police Accountability is more specific, and its statement that the citation was appropriate "regardless of signage" gives the Court some pause. Had a final policymaker written it, the analysis might be different. But Forland has not shown that the Office of Police Accountability has authority to make policy for the City or the Department, and the Chief's own letter describes that office as one that reviews the Department's internal investigations. The views of a reviewing office cannot be attributed to the City under *Monell*. *See Praprotnik*, 485 U.S. at 127. Forland's reminder that ratification is ordinarily a jury question does not change the result. A plaintiff must still produce evidence from which a jury could find each element, and Forland has not done so. *See Christie*, 176 F.3d at 1239–40.

Summary judgment is granted on Claim IV. Because Claims III and IV are the only claims against the City of Boise, the City will be dismissed from this action.

## ORDER

**IT IS ORDERED that:**

1. Defendants' Motion for Summary Judgment (Dkt. 13) is GRANTED in part and DENIED in part. The motion is DENIED as to Claim I; GRANTED as to Claim II to

the extent that claim rests on the initial stop and otherwise DENIED; and GRANTED as to Claims III and IV.

2. The City of Boise is DISMISSED from this action.

DATED: November 20, 2026

B. Lynn Winmill
U.S. District Court Judge